REINIG and others, Trustees, Plaintiffs and Respondents, vs. NELSON and others, Defendants and Respondents: HANDT, Executrix, Defendant and Appellant.

*September 10—October 8, 1929.*

For the appellant Ella M. Handt, executrix, there were briefs by *Duffy & Duffy* of Fond du Lac, and oral argument by *F. Ryan Duffy.*

For the respondent trustees there was a brief by *Martin & Kelley* of Fond du Lac, and oral argument by *J. L. Kelley.*

For the defendant respondents there was a brief by *T. L. Doyle,* attorney, and *Cecilia Doyle,* of counsel, both of Fond du Lac, and oral argument by *Mr. Doyle.*

STEVENS, J. (1) The members of the syndicate contend that the agreement signed by them created a joint-stock company and that the plaintiffs have no right to proceed against the individual members of the syndicate until they have exhausted their remedies against the company and its property. Sec. 286.06, Stats. The learned trial court was clearly right in holding that the agreement did not create a joint-stock company. A joint-stock company is required to have a president upon whom process may be served, as well as shareholders or associates. Sec. 286.04, Stats. Such joint-stock company ordinarily has a fixed capital which is divided into transferable shares of fixed value. 33 Corp. Jur. p. 884. The syndicate here in question has neither a president nor a capital stock of fixed value.

The trial court was clearly right in holding that the parties to this agreement were joint adventurers. "Such an arrangement, if it related to a continuous business and if it contemplated numerous transactions, would clearly consti-

tute a partnership. Being confined to one transaction it comes in the class of joint adventures. . . . Essentially there is little difference between a partnership and a joint adventure, the latter, as a rule, being more limited and confined in its scope principally to a single transaction." *Barry v. Kern*, 184 Wis. 266, 269, 268, 199 N. W. 77.

The liability of these defendant joint adventurers was essentially that of partners, at least so far as the note in question was concerned. The trustees who signed this $8,000 note were agents of all of their associates in the giving of the note. They were acting strictly within the scope of the authority conferred upon them by these joint adventurers for the purpose of promoting the very object for which the syndicate was formed. They were all liable upon the note when suit was begun unless that liability had been extinguished by the running of the statute of limitations.

(2) The question whether plaintiffs have the right to judgment against all the members of the syndicate turns upon the question of whether the payment of interest on this $8,000 note out of the funds borrowed by Mr. Handt for that purpose interrupted the running of the statute of limitations as to all of the defendants, or only as to Mr. Handt, as was held by the trial court. At the time Mr. Handt borrowed this money and placed it in the syndicate funds he was one of the trustees who held the legal title to the land who were charged with the duty of entering into all contracts necessary to carry the syndicate agreement into effect. In addition to the duties imposed upon him as a trustee, the proof establishes the fact that the members of the syndicate had selected Mr. Handt to handle the affairs of the syndicate "as a manager."

The reports submitted to the syndicate members show that his predecessor as trustee and manager had borrowed money, placed it in the syndicate fund and used it to pay taxes and interest, and that such loan was repaid out of the proceeds of

crops raised upon the syndicate land. These reports show that from the time that Mr. Handt became trustee and manager, the syndicate was at all times indebted to him for moneys advanced by him to protect the interests of the members of the syndicate, and that the amounts owed to Mr. Handt were reduced from time to time as money came in from crops raised upon the Montana land. The record is barren of any proof that any member ever questioned or objected to this course of conduct pursued during all the years when there were lean crops in Montana.

"As a general rule, each one of several joint adventurers has power to bind the others in matters which are strictly within the scope of the joint enterprise." 15 Ruling Case Law, p. 505. The protection of the property owned by the syndicate was strictly within the scope of the joint enterprise. The syndicate was formed for the express purpose of retaining ownership of the property until such time as it could be sold at a profit for the benefit of all these defendants.

Had there been funds in the syndicate treasury, no question could be raised as to the power and the duty of Mr. Handt to protect the interests of the defendants by seeing that there was no default in the payment of interest on the mortgage or taxes upon the land. If there were funds in the treasury he might have been liable to the members of the syndicate if his failure to make these payments caused loss to the syndicate.

The payment of interest made by him within six years prior to the commencement of the action was clearly a payment made within the scope of his duties as such trustee and manager for the purpose of promoting the interests of the syndicate and of its members, regardless of the question whether the money in the syndicate fund came from the sale of crops or out of the pocket of Mr. Handt. In either case he was protecting the interests of these defendants and acting within the scope of the duties imposed upon him as trustee of the title and manager of the property. In order to carry

the syndicate agreement into effect and to protect the interests of its members it was necessary that he, as such manager, should see that the taxes and interest were paid. If the necessary funds were not in the syndicate treasury, it was within the scope of his powers as manager to see that the money was procured. He should not be held liable for this entire debt because he used his own credit to protect the interests of the syndicate, instead of asking the members to raise the necessary funds.

The relationship existing between these joint adventurers, while not strictly that of partners, has many of the essential elements of such a relationship. "Although courts in modern times do not treat a joint adventure as identical with a partnership, it is so similar in its nature and in the contractual relationships created by such adventure that the rights as between themselves are governed practically by the same rules that govern partnerships." *Goss v. Lanin,* 170 Iowa, 57, 61, 152 N. W. 43, 45.

There is some conflict in the decisions as to whether a partner or joint adventurer has the power to make a payment on a firm obligation which will toll the statute of limitations as to partners or joint adventurers who did not join in the making of the payment. Wisconsin adopted the rule that each partner is the agent of all his partners in making payments upon firm obligations and that part payment by one partner, even after the dissolution of the firm, before the statute has run, "forms a new point from which the statute begins to run as to all the partners." *Clement v. Clement,* 69 Wis. 599, 604, 35 N. W. 17. In this regard the power of a joint adventurer is the same as that of a partner. In this case the payment was made before the joint adventure ended for the purpose of protecting the interests of all of the joint adventurers, so that the case clearly falls within the rule as to partners which prevails in Wisconsin.

The relationship was such as to give Mr. Handt authority

to make payment on behalf of all his codefendants which tolled the running of the statute. But the determination of this case does not rest upon that basis alone. It clearly appears that the defendants had intrusted the management and control of the adventure to Mr. Handt as manager. As such manager he had the power to make the payment of this interest on behalf of his codefendants.

Sec. 330.44 of the Statutes, which provides that a payment by one joint contractor shall not toll the running of the statute as to the other joint contractors who did not join in making such payment, has no application to this case. "There are incidents, rights, and liabilities of a partnership which make the members of the firm in such case something more than mere joint contractors." *Clement v. Clement,* 69 Wis. 599, 603, 35 N. W. 17. "A partner stands differently from one of two or more joint contractors, whose promise or payment cannot take a debt out of the statute of limitations against another joint contractor. Pub. Stats. ch. 197, sec. 17. As to matters pertaining to the partnership business, the act of one of the members of a firm is the act of all, and a part payment of a partnership debt by one partner will have the same effect against the others as against the one who makes it." *Harding v. Butler,* 156 Mass. 34–35, 30 N. E. 168.

The judgment entered is reversed and vacated, and the cause is remanded with directions to enter judgment for the amount found due the plaintiffs against all defendants who were served with process in this case.

*By the Court.*—So ordered.

FOWLER, J., took no part.