C. J. HARRIS v. CABARRUS BANK AND TRUST COMPANY, ADMINISTRATOR, C. T. A., ET AL. EXECUTORS OF THE ESTATE OF ROBERT F. PHIFER.

(Filed 10 January, 1934.)

1. **Brokers A a: Executors and Administrators C c—Ordinarily executor cannot bind estate by brokerage contract to sell at fixed price.**

An executor of an estate has no power to bind the estate by a brokerage contract with a real estate agent for sale of lands belonging to the estate, unless it is made to appear that such power was given under the will or otherwise, and where there is no evidence that the executor had been given such authority a demurrer is properly sustained in an action against the executor in his representative capacity by the real estate broker to recover commissions for procuring a proposed purchaser upon the terms agreed upon, the real estate broker being chargeable with knowledge of the legal limitations on the executor's authority.

2. **Brokers D a—Seller may not maintain that proposed purchaser could not pay cash in accordance with agreement where deed is not tendered.**

Where the contract with a real estate agent is that he shall sell lands upon commission at a certain price for cash and he finds a purchaser who

agrees to buy at the price fixed, in the agent's action to recover the commission, the question as to whether the proposed purchaser was able and willing to pay the purchase price in cash may not be taken advantage of by the seller where he has not tendered a deed to the lands and has not demanded the cash payment.

CIVIL ACTION, before *Warlick, J.,* at February Term, 1933, of CABARRUS.

It was alleged in the complaint that Robert F. Phifer, of the city of New York, died on or about 16 October, 1928, leaving a last will and testament in which the New York Trust Company and Marshall Phifer Williamson were appointed executors and duly qualified as such, and that the Cabarrus Bank and Trust Company was duly appointed administrator, *c. t. a.* of said Robert Phifer, deceased, by the clerk of the Superior Court of Cabarrus County, North Carolina, and all are now acting in their said capacities.

The evidence tended to show that the plaintiff is a real estate agent in Cabarrus County, and that the law firm of Fletcher & Brown, of New York, were attorneys for the New York Trust Company. Mr. Brown, one of said attorneys, came to Cabarrus County to look over the property of the deceased Phifer. The plaintiff testified that the said attorney Brown employed him to sell certain property situated on South Union Street in Concord, N. C., belonging to said estate. The plaintiff said that as a result of the conference with Brown he undertook to procure customers for the property and as a result secured an offer for the property for the sum of $25,000 cash. This offer was communicated to Brown and in response thereto Brown wrote the following letter to Harris: "*Re* estate of Robert F. Phifer. I have your letter of the 19th inst. The result of my investigation after talking with a number of people in Concord when I was there was that South Union Street property is worth $1,000 a front foot and I consider that $25,000 is an inadequate amount to sell 34 feet for, and I think that we have offered you an exceptionally good proposition in offering to permit you to sell for $26,500. Fletcher & Brown, by A. L. Brown." After receiving the letter of 24 April, 1929, the plaintiff Harris interested Jay Linker in the purchase of the property. The plaintiff and Linker went to the office of the defendant, Cabarrus Bank and Trust Company, and renewed the offer in the presence of W. L. Burns, vice-president of the bank. Thereupon the following telegram was sent to Brown in New York: "In accordance with your letter of 24 April, Mr. Harris has sold remaining Union Street business property for twenty-six thousand five hundred dollars. Shall we confirm? W. L. Burns, vice-president, Cabarrus Savings Bank, Concord, N. C." Brown replied to the telegram on 21 May, 1929, as follows: "Trust Company and Williamson

authorize you to sell remaining Union Street property for $26,500 if you recommend sale. A. L. Brown."

The plaintiff heard nothing further from the matter and on 15 June, 1929, wrote a letter to the attorneys, Fletcher & Brown, New York, claiming a commission of five per cent for making the sale, and amounting to $1,325. Linker testified that at the time he went into the office of the defendant, Cabarrus Bank and Trust Company, he understood that the deal was to be a cash transaction, and "at that time I was ready, able and willing to take the property at my offer of $26,500. At that time I was in a financial position to put down a fair deposit in cash. They did not ask for any deposit, so it was not necessary to offer the deposit until the deed was offered for delivery. . . . I did not have the cash that day, but was in a position to get it whenever they delivered the deed." No deed was ever tendered by the defendants to Linker and no demand ever made for the payment of the purchase money.

The following issues were submitted to the jury:

1. "Was the plaintiff, C. J. Harris, authorized by the defendants to act as agent for the defendants in the sale and disposition of the Union Street property at the price of $26,500?"

2. "If so, did the plaintiff, C. J. Harris, find a proposed purchaser at the price of $26,500 for said property?"

3. "Was the proposed purchaser J. B. Linker so found by the plaintiff, C. J. Harris, ready, able and willing to purchase said property at the price of $26,500, according to the terms of the sale?"

4. "What amount, if anything, are the defendants indebted to the plaintiff?"

The jury in response to instructions by the court, answered the first issue "Yes"; the second issue "Yes"; the third issue "Yes," and also answered the fourth issue "$1,325."

From judgment upon the verdict the defendants appealed.

*Hartsell & Hartsell for plaintiff.*
*J. Lee Crowell and J. Lee Crowell, Jr., for defendants.*

BROGDEN, J. Is a letter written by the attorneys for the executors of an estate, authorizing a real estate agent to sell land belonging to the estate, sufficient evidence of agency to bind the estate in the absence of proof of either express or implied authority conferred upon the executors to sell and convey real property?

At the outset the plaintiff knew that he was dealing with the representatives of a dead man, and consequently the law imposed upon him the duty of ascertaining the extent of the authority of the parties

to dispose of the real estate. The power of personal representatives to contract with respect to real property of decedent is limited and fenced in both by statute and the decisions. Thus in *Hedgecock v. Tate,* 168 N. C., 660, 85 S. E., 34, the Court said: "The plaintiff cannot enforce specific performance of the option, because there is nothing to show, in the first place, that the executors to the will of J. B. Richardson are given power to sell land. Even if they were vested with the power to sell land, it has been held that that does not give the executors any power to give an option to purchase." See *Vaughan v. Farmer,* 90 N. C., 607; *Trogden v. Williams,* 144 N. C., 194, 56 S. E., 865; *Powell v. Woodcock,* 149 N. C., 235, 62 S. E., 1071; Ann. Cas. 1916-D, 410, 448, 449. The will of testator was not offered in evidence. Hence there was nothing to indicate either the express or implied power of the personal representatives to sell land, nor was there any evidence of authority of the attorney to make such a contract except the bare fact that he was representing the executors. He testified: "I was never vested with authority to sell or authorize contracts for the sale of any real estate belonging to the estate of Robert F. Phifer, deceased." The plaintiff said: "I never made any trade with the New York Trust Company or Marshall P. Williamson, the executors of the estate. Have never seen any of the New York Trust Company, but have talked with Mr. Williamson, never talked any business with him only through A. L. Brown."

This suit was brought against the administrator and executors in their representative capacity, and therefore the claim is asserted against the estate and not against the executors personally, upon the theory that they exceeded their authority as agents.

The trial judge instructed the jury as follows: "The court . . . instructs you as a matter of law that if you find the facts to be as the evidence tends to show that you would answer the first issue 'Yes,' finding thereby that the plaintiff, C. J. Harris, was authorized by the defendants to act as agent for the defendants in the sale and disposition of the Union Street property at the price of $26,500."

Interpreted in the light of the foregoing decisions and others of like tenor, the instruction so given was erroneous.

The defendants earnestly contend that there was no evidence that Linker, the proposed purchaser, was ready, able and willing to comply with the agreement. The law is that "a broker, who negotiates the sale of property, is not entitled to his commissions unless he finds a purchaser in a situation and ready and willing to complete the purchase on the terms agreed upon between him and his principal, the vendor." *Trust Co. v. Adams,* 145 N. C., 161, 58 S. E., 1008; *Hardy v. Ward,* 150 N. C., 385, 64 S. E., 171; *Winders v. Kenan,* 161 N. C., 628, 77 S. E., 687; *Crowell v. Parker,* 171 N. C., 392, 88 S. E., 497; *McCoy v.*

*Trust Co.,* 204 N. C., 721. However, it is to be observed that the offer to sell the property for $26,500 specified no time for the payment of the purchase money, nor did it specify that such money was to be paid in cash at the time of the acceptance of the offer. The letter was no more than a bare agreement to sell the property for the sum stipulated. Consequently, in order for the defendants to take advantage of the "ready, able and willing" doctrine, it was their duty to tender a deed within a reasonable time and demand the price. This they failed to do. Hence they cannot now set on foot an examination as to whether the proposed purchaser had $26,500 in cash in his pocket on the day he appeared at the office of the Trust Company and agreed to purchase the land at that price.

Error.