SCHLEICKER, Respondent, vs. KRIER, Appellant.

*April 29—June 4, 1935.*

*L. C. Gunderson* of Madison, for the appellant.

For the respondent the cause was submitted on the brief of *Grady, Farnsworth & Walker* of Portage.

FAIRCHILD, J.   A partnership or a joint adventure does not usually exist between the owner of a farm and the tenant who has undertaken to work the farm on shares.   A partner-

ship is an association of two or more persons to carry on as co-owners a business for profit. The sharing of gross returns does not of itself establish a partnership, regardless of the fact that the persons sharing may have a common right or interest in some of the property from which the returns to be divided are derived. Secs. 123.03, 123.04, Stats.; *Langley v. Sanborn*, 135 Wis. 178, 114 N. W. 787; *Wagner v. Buttles*, 151 Wis. 668, 139 N. W. 425.

The appellant is the father of Mrs. Lapp, one of the defendants, who are charged with causing the damage suffered by respondent. He let his farm to his son-in-law, another defendant, by an arrangement under which the son-in-law was to work the farm and divide the proceeds. The farm and stock were turned over to Lapp on terms calculated to assist him in getting started in the business of farming. The facts disclosed support that inference as drawn by the jury. Appellant and defendant Lapp were not partners. The facts excluding the suggestion of partnership also exclude the idea of a joint enterprise or adventure which is more limited than a partnership and is usually confined in its scope to a single transaction. There is a sense in which the farmer and the owner were interested in the success of the farm, but neither a partnership nor a joint adventure resulted. The defendant Lapp possessed the business. The appellant did not intend to engage in farming, and he is not involved in this action by any act or words of his. The facts, as found by the jury, show that he had retired. There was no intention on the part of Lapp or appellant that the arrangement should comprehend anything more than the operation of the farm on shares. Their agreement must especially control in a situation where there has been no holding out as partners or joint adventurers and no reliance by a third party upon the existence of such a relationship. Defendant Lapp succeeded the appellant in the management and control of the farm. Appellant moved out of the house he had occupied while running the farm and

lived elsewhere. He did, after his wife's death, return and become a boarder in the house now presided over by his daughter, wife of defendant Lapp. His parental interest in his children and the assistance he extended to them are not of a character to transform him into a partner in the business of his son-in-law, or commit him to the enterprise as a joint adventurer. Similar arrangements are not unfamiliar. They are resorted to by men with the idea of serving a purpose useful to the owner of a farm and to the tenant. Usually, these arrangements rest in parol. The informality results in uncertainties which require adjustment from time to time, but the tenant is not a hired man or a partner of the owner. The tenant is an independent operator compensating his landlord for use of the farm in shares of crops instead of money rental.

In the special verdict, the fourth question submitted to the jury and answered "No," was as follows:

"At the time of the collision was the car driven by defendant Lapp being used in connection with the carrying of a joint enterprise and business, in which he and defendant Krier were engaged?"

Upon motions after verdict, the trial court changed the answer to this question from "No" to "Yes." In the memorandum opinion it was said by the trial court:

"I doubt their being partners in a legal sense; I would hardly call them joint adventurers. The family relationship drew them together; they lived together on the farm as a family with a close community of interest and evidently gave more consideration to the detail of their relationship after the collision in question than before."

Whether or not the car was being used in connection with a joint enterprise is dependent upon the facts surrounding the trip to Columbus and the purposes for which the trip was made. If there was reason for dispute as to whom the men were working for at the time of the accident, or as to whether

or not appellant did consent that the trip be made for the joint benefit of himself and Lapp, the evidence would present a jury question. The evidence falls far short of establishing, as a matter of law, that appellant and Lapp were engaged in either a partnership or a joint adventure, and the same is true as to the question of agency.

The court refers to attempts by defendant and appellant to evade answering questions fully, and there appears to be some reason for this criticism. But there is sufficient credible evidence to sustain the answer given by the jury to the fourth question, and, as no sufficient legal reason existed for interfering therewith, we must reverse the ruling of the court below. This leaves a record under which judgment must go in favor of appellant.

*By the Court.*—Judgment reversed, and cause remanded with directions to reinstate the jury's answer of "No" to question No. 4, and to grant judgment accordingly.