FLOYD S. PIKE v. WACHOVIA BANK AND TRUST COMPANY; R. J. LOVILL, JR.; HENRY B. ROWE, JR.; GLADYS W. LOVILL; J. WALTER LOVILL, JR.; EDWARD F. LOVILL; AND MARGARET LOVILL MARTIN.

(Filed 14 June 1968.)

**1. Joint Ventures—**

Each member of a joint adventure is both an agent for his co-adventurer and a principal for himself.

**2. Partnership § 1;   Joint Ventures—**

Although a partnership and a joint adventure are distinct relationships, a partnership ordinarily relating to a continuing action, a joint adventure is in the nature of a partnership and is governed by substantially the same rules as a partnership.

**3. Guardian and Ward §§ 3, 4;   Insane Persons § 4—**

The title to guardianship property remains in the ward and the guardian may take no action toward the sale of the ward's property without order and approval of the court.

**4. Joint Ventures—**

An agreement between owners of a one-half undivided interest in realty and the guardian of the incompetent owner of the other one-half interest to sell the property, the sale being subject to court approval, does not create a joint adventure so that in an action against all the parties to the agreement evidence admissible against one defendant may be considered against the others, since each party could not direct the conduct of the others, and since there was no undertaking attended with risk by which the parties jointly sought a profit.

**5. Contracts § 12—**

The heart of a contract is the intention of the parties, which is ascertained from the subject matter, the language used, the purpose sought, and the situation of the parties at the time.

**6. Guardian and Ward § 4;   Insane Persons § 4—**

In selling real property under order of court, a guardian is merely an agent of the court and the sale is not consummated until it is confirmed by the clerk when originally ordered by him, and by the resident judge or the judge *regularly holding courts in the district,* G.S. 1-339.28, and whether the sale will be confirmed rests in the discretion of the court.

**7. Contracts § 1—**

Laws in force at the time of the execution of a contract become a part thereof, including those laws which affect its validity, construction, discharge and enforcement.

**8. Guardian and Ward § 7;   Insane Persons § 7—   Guardian held not personally liable on agreement that ward's property would be resold.**

A judicial sale was held of property owned by defendant guardian's ward. After the time for filing upset bids had expired but before the sale was confirmed by the court, plaintiff and defendant guardian allegedly entered an agreement that plaintiff would be given an opportunity to purchase the property at a resale, the letter constituting the agreement showing that control of the sale was vested in the court. The court subsequently confirmed the original sale and no resale was held. *Held:* Defendant guardian may not be held personally liable upon the promise that a resale would be held since plaintiff knew defendant was acting as a guardian and is chargeable with knowledge that defendant could act only under order and direction of the court.

**9. Damages § 2;   Contracts § 29—**

To recover compensatory damages in a contract action plaintiff must show that the damages claimed were the natural and probable result of the acts complained of, and must also show the amount of loss with reasonable certainty, and such damages may not be based on mere speculation or conjecture.

**10. Damages §§ 1, 2;   Contracts § 29—**

In an action for breach of an agreement that plaintiff would be given the opportunity to purchase property at a judicial resale, plaintiff could recover only nominal damages since plaintiff would have had no assurance that he could purchase the property at a resale but would have had only a right to present a bid.

HUSKINS, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Lupton, J.,* 29 May 1967 Session of SURRY. This case was docketed and argued as No. 766 at Fall Term 1967.

Civil action to recover damages for breach of contract.

The title to certain real property in downtown Mt. Airy, North Carolina, known as Blue Ridge Inn property, was held as follows:

(1)   Dio Clayton Lewis — ½ undivided interest.

(2)   G. C. Lovill Estate — ¼ undivided interest.

(3)   J. W. Lovill Estate — ¼ undivided interest.

R. J. Lovill, Jr. and Henry B. Rowe, Jr. are the co-executors and trustees of the G. C. Lovill estate. Gladys W. Lovill, J. Walter Lovill, Jr., Edward F. Lovill and Margaret Lovill Martin are co-executors and trustees of the J. W. Lovill estate.

On 31 July 1964 Wachovia Bank and Trust Company was appointed by the Clerk of Superior Court of Surry County to serve as trustee for Dio Clayton Lewis, an incompetent.

On 19 February 1965, Wachovia Bank, as trustee for Dio Clayton Lewis, filed petition in Surry County Superior Court seeking authority to conduct a judicial sale of the property. Paragraph 4 of the petition recites that after deducting taxes and other maintenance expenses from the income derived from the property, an annual loss of approximately $2443.00 resulted. Paragraph 6 recites:

> "All of the parties who have, or who may have, an interest in the real property referred to above have, subject to the approval of the Court, agreed to join with Wachovia Bank and Trust Company and to offer the property for sale at public auction subject to the following conditions:"

Pertinent conditions imposed were as follows:

> "A. Wachovia Bank and Trust Company as guardian for D. C. Lewis will join with all other parties who have, or may have an interest, in the real property owned by Blue Ridge Inn Company and will conduct a judicial sale of the real property of Blue Ridge Inn Company. . . .

> "D. . . . the sale shall be for cash to the highest bidder subject to confirmation by the Resident Judge of the Seventeenth Judicial District; . . .

> "WHEREFORE, your petitioner prays:

> (1) That Wachovia Bank and Trust Company be authorized to conduct a judicial sale of the property owned by Blue Ridge Inn Company, said sale to be for cash to the highest bidder;

> . . . .

> (3) That Wachovia Bank and Trust Company be authorized . . . to distribute the net proceeds one-half to itself as guardian for Dio Clayton Lewis and one-half to the other owners of the property as their interests may appear."

On 23 February 1965 Allen H. Gwyn, Resident Judge of the Seventeenth Judicial District of North Carolina, and Martha O. Comer,

Clerk of the Surry County Superior Court, signed an order authorizing Wachovia Bank and Trust Company to conduct a judicial sale of the property owned by the Blue Ridge Inn Company.

On 2 March 1965, Wachovia Bank and Trust Company, party of the first part; R. J. Lovill, Jr. and Henry B. Rowe, Jr., Gladys W. Lovill, J. Walter Lovill, Jr., Edward F. Lovill and Margaret Lovill Martin, party of the second part; and George W. Sparger, III, trading as George W. Sparger Real Estate Agency, party of the third part, entered into a written agreement, material portions of which are set forth below:

"WHEREAS, Wachovia Bank and Trust Company has petitioned the Superior Court of Surry County, North Carolina, for authority to dispose of the one-half interest of D. C. Lewis in the real estate partnership known as Blue Ridge Inn Company, a copy of which petition is attached hereto and incorporated herein by reference; and

"WHEREAS, all persons designated hereinabove as the party of the second part have agreed to submit to a sale of the real property interest previously owned by G. C. Lovill and J. W. Lovill in the Blue Ridge Inn Company; and

"WHEREAS, the party of the third part has agreed to conduct an auction of the property owned by Wachovia Bank and Trust Company, guardian for D. C. Lewis and by the parties designated hereinabove as the party of the second part.

"Now, THEREFORE, in consideration of the premises, the parties hereto mutually agree as follows:

. . . .

"(4)  The sale shall be conducted by the party of the third part on Friday, April 2 or Friday, April 9, 1965, or on such other date as shall be mutually agreeable, on the premises of Blue Ridge Inn Company in Mount Airy, North Carolina. . . .

"(5)  The parties to this agreement, mutually agree that the sale of the real property of Blue Ridge Inn Company will be conducted under the statutes of the State of North Carolina applicable to the conduct of judicial sales; that all sales are subject to approval by the party of the first part, all of the parties of the second part, and Allen H. Gwyn, Resident Judge of the Seventeenth Judicial District. . . . The terms of the sale shall be for cash to the highest bidder; a deposit of ten per cent (10%) of the purchase price will be required on the date of the sale and upon payment of the balance of the purchase

price, the deed will be delivered to the purchaser within fifteen (15) days after the sale has been finally approved by the resident judge. . . .

"(6)  As between the party of the first part and the party of the second part, it is agreed that all expenses of conducting the sale of the property of Blue Ridge Inn Company shall be borne equally by each.

"(7)  As between the executors and trustees of the estate of G. C. Lovill and the executors and trustees of the estate of J. W. Lovill, it is agreed that each estate will share equally any expenses of sale which shall be attributable to the party of the second part.

"(8)  Each of the parties to this agreement hereby consents to a disbursement of the net proceeds derived from the sale of the real property of Blue Ridge Inn Company by the payment of such funds one-half to Wachovia Bank and Trust Company, Trustee for Dio Clayton Lewis; one-fourth to R. J. Lovill, Jr., and Henry B. Rowe, Jr., co-executors and trustees of the estate of G. C. Lovill; and one-fourth to Gladys W. Lovill, J. Walter Lovill, Jr., Edward F. Lovill and Margaret Lovill Martin, coexecutors and trustees of the estate of J. W. Lovill."

The sale was conducted on 9 April 1965, and United Savings & Loan Association of Mount Airy was the highest bidder at the price of $155,190.00. Report of sale was filed 12 April 1965.

Harry Joe King, Executive Vice President of Northwestern Bank, testified that after the sale he was contacted by Henry B. Rowe, Jr., with reference to obtaining a higher bid for the property. Upon objection by all defendants, Mr. King testified, admissible only against the G. C. Lovill estate, that Henry B. Rowe, Jr., called him and stated that Mr. Miller Nifong from Wachovia Bank was in his office, that they were discussing the bid, and that they were going to hold it open for twenty-four hours. This transaction occurred on 28 April, 1965.

Plaintiff, Floyd S. Pike, testified that he had a telephone conversation with Henry B. Rowe on 29 April 1965, and with Penn Sandridge, Jr., on 5 May 1965, with reference to the Blue Ridge Inn Company property. After the conversation with Mr. Rowe, Pike informed his banker, Harry Joe King, to deliver a cashier's check for $55,000.00 to Mr. Rowe, payable to Wachovia Bank and Trust Company, Trustee for Dio Clayton Lewis estate. Following his conver-

sation with Mr. Rowe, Pike received a letter from W. P. Sandridge, Jr., as set forth below:

WOMBLE, CARLYLE, SANDRIDGE & RICE
Attorneys and Counsellors at Law
Wachovia Bank Building
Winston-Salem, N. C. 27102

5 May 1965

Mr. Floyd S. Pike
Box 986
Mount Airy, North Carolina

*Re: Estate of D. C. Lewis*

Dear Mr. Pike:

This will confirm our telephone conversation of May 5, 1965 with regard to *your bid of $163,000.00* for the purchase of the property in downtown Mount Airy, bounded by Main Street, West Oak Street and Market Street and described particularly in *the Notice of Sale which appeared in the Mount Airy paper and which was bid in by United Savings & Loan Association* on April 9, 1965 for $155,-190.00.

*I talked yesterday with Judge Gwyn, the Resident Judge of your judicial district, and am informed by him that in view of your offer to purchase the above-mentioned property for $163,000.00, he will not confirm the sale* to United Savings & Loan Association for the $155,190 amount. As I explained, since your bid came after the expiration of the 10-day period for filing upset bids, *the property will have to be readvertised and sold again as if there had been no original sale.*

You have deposited with Mr. Henry Rowe a cashier's check in the amount of $55,000.00 to insure Wachovia and the other owners of the downtown Mount Airy property that you will make good your offer to purchase the real estate for $163,000.00. In the event that you do not follow through with your offer to purchase, the $55,000.00 will be forfeited in full. Of course, the $55,000.00 deposit will be applied toward the purchase price when it is bid in by you at the second sale. You understand also that if, at the time of the sale, an amount is bid in excess of $163,000.00 by some third party, the $55,000.00 will be returned to you.

You may be assured that as *attorneys for Wachovia Bank and Trust Company, Trustee for Dio Clayton Lewis,* we will do everything possible to effect the sale at the earliest practical date. *As you know, the second sale will be advertised for 30 days and will remain open after the sale for a period of 10 days for the filing of upset bids.*

If this letter conforms to your understanding of the terms im-

posed on your $55,000.00 deposit, we would be grateful if you would sign a copy of this letter and return it to us in the enclosed self-addressed envelope. If, for any reason, this letter does not confirm your understanding or if you feel there are additional terms which I have failed to mention, please note any such corrections or additions on the enclosed copy and return that to me at your earliest convenience.

Upon the receipt of a copy of this letter, we will proceed to prepare the necessary papers in order to void the prior sale to United Savings & Loan Association.

Very truly yours,

/s/   W. P. Sandridge, Jr.

WPSJr:sm

enc.

cc: Mr. Miller A. Nifong        F. S. P. signed
     Trust Real Estate          and returned
     Wachovia Bank and Trust Co.      5-10-65
     Winston-Salem, N. C.

(All emphasis in quoted letter ours)

Pike testified that he made no changes in the letter, signed it and returned it by messenger to Mr. Sandridge on 10 May 1965. He further testified that he had never received an opportunity to bid at a resale of the property.

By letter dated 10 June 1965 from James M. Gregg, Jr., Trust Officer, Wachovia Bank and Trust Company, to Floyd S. Pike, the latter was informed that Judge Gwyn, over Wachovia's objection, had confirmed the sale of the Blue Ridge Inn Company property to United Savings and Loan Association and directed that the property be conveyed to it. Further, that upon request of the executors of the G. C. Lovill and J. W. Lovill estates, and also upon motion filed by Wachovia, Judge Gwyn held a second hearing on the question of setting aside the sale. At the conclusion of the hearing, Judge Gwyn indicated that he still thought the confirmation of the sale to United Savings and Loan Association should stand. The letter further stated that "after the hearing all the owners of the property decided against pursuing the matter further, and Judge Gwyn has entered a final order dated June 8, 1965 reconfirming the prior order (copy enclosed.)" Plaintiff introduced into evidence deeds from defendants to United Savings and Loan Association conveying the subject property.

The check for $55,000.00 was returned to Floyd S. Pike, and Pike returned it to Mr. James M. Gregg, Jr., Trust Officer, Wachovia Bank and Trust Company, Winston-Salem, N. C. Pike then received

the envelope marked "Refused, James M. Gregg, Jr., 6/23/65." Pike then deposited the check in the Northwestern Bank at Mount Airy to the account of Wachovia Bank and Trust Company. This testimony as to the check was admitted only against defendant Wachovia Bank and Trust Company.

Plaintiff, in the absence of the jury, tendered evidence as to conversations he had had with Mr. Rowe in reference to his (plaintiff's) plans concerning the Blue Ridge Inn Company property. The purpose of this testimony was to show damages. Objections by all defendants were sustained as to the admission of this testimony into evidence.

At the conclusion of plaintiff's evidence, all defendants' motions for nonsuit were granted.

Plaintiff appealed.

*Craige, Brawley, Horton & Graham and George K. Snow for plaintiff.*

*Womble, Carlyle, Sandridge & Rice for defendant Wachovia Bank and Trust Company.*

*Woltz and Faw for the G. C. Lovill Estate.*

*P. M. Sharpe and Barber, Gardner and Gardner for the J. W. Lovill Estate.*

BRANCH, J.  Appellant assigns as error failure of the court to admit evidence adduced as to one defendant to be considered against all defendants, on the theory that defendants were engaged in a joint adventure so as to constitute each defendant a principal and the agent of the others.

Each member of a joint adventure is both an agent for his co-adventurer and a principal for himself. *Summers v. Hoffman,* 341 Mich. 686, 69 N.W. 2d 198; 48 C.J.S., Joint Adventures, § 5, p. 827.

"The terms joint adventure and joint venture are synonymous. 48 C.J.S. Joint Adventure § 1, p. 803." *Bradbury v. Nagelhus,* 132 Mt. 417, 319 P. 2d 503.

*In re Simpson,* 222 F. Supp. 904 (M.D.N.C., 1963) defines and discusses the relationship of a joint venture as follows:

> " 'A joint venture is an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, but without creating a partnership in the legal or technical sense of the term.
>
> .  .  .

" 'Facts showing the joining of funds, property, or labor, in a common purpose to attain a result for the benefit of the parties in which each has a right in some measure to direct the conduct of the other through a necessary fiduciary relation, will justify a finding that a joint adventure exists.'

. . .

" 'To constitute a joint adventure, the parties must combine their property, money, efforts, skill, or knowledge in some common undertaking. The contributions of the respective parties need not be equal or of the same character, but there must be some contribution by each coadventurer of something promotive of the enterprise.' "

A joint adventure is in the nature of a kind of partnership, and although a partnership and a joint adventure are distinct relationships, they are governed by substantially the same rules. *Wiley v. Wirbelauer*, 116 N.J. Eq. 391, 174 A 20; *Alexander v. Turner*, 139 Neb. 364, 297 N.W. 589; *McKee v. Capitol Dairies*, 164 Or. 1, 99 P 2d 1013; *Easter Oil Corp. v. Strauss* (Tex. Civ. App.), 52 S.W. 2d 336. The outstanding difference between a partnership and a joint adventure is that the former ordinarily relates to a continuing action. *Chisholm v. Gilmer* (C.C.A. 4th), 81 F. 2d 120; *Proctor v. Hearne*, 100 Fla. 1180, 131 So. 173; *Tidewater Constr. Co. v. Monroe County*, 107 Fla. 648, 146 So. 209; *Reinig v. Nelson*, 199 Wis. 482, 227 N.W. 14; *Schleicker v. Krier*, 218 Wis. 376, 261 N.W. 413.

It is stated in 48 C.J.S., Joint Adventures § 1, p. 806:

"A joint adventure is distinguishable from joint ownership and tenancy in common in that the latter lacks the feature of adventure. So the mere purchase of property by two persons each of whom contributes a portion of the purchase price makes them joint owners of the property, but does not establish between them the relation of joint adventurers, . . . However, the nature of the agreement between parties purchasing land jointly in a transaction for profit may constitute it a joint adventure. *A sale of jointly owned property is in no sense a joint adventure.*" (Emphasis ours.)

In the case of *Johnson v. Watland*, 208 Ia. 1370, 227 N.W. 410, landlord Watland and tenant, Rasmussen, operated a farm under an agreement generally known as a "share crop agreement," by which the landlord furnished the land, half of the stock, and bore half of the expenses, and the tenant furnished labor, half of the expenses and half of the stock. The profits and increase in stock were shared equally. Watland and Rasmussen offered property, jointly

owned by them under the lease, for sale at public auction, which sale was advertised in both of their names. The plaintiff brought action against the maker of a note executed to Watland and Rasmussen for property purchased at the sale. The note was endorsed Watland Rasmussen by Rasmussen. The plaintiff contended that Watland and Rasmussen were liable on the theory that the note was taken in the prosecution of a joint adventure between Watland and Rasmussen. Holding that the relationship between Watland and Rasmussen was not a joint adventure, the Court stated:

". . . The property sold was jointly owned by appellants under the lease, and the sale, though advertised in the name of "Watland and Rasmussen," was merely a sale of their joint property for the purpose of converting it into money in closing up the tenancy. It was in no sense a venture."

We find these definitions in Black's Law Dictionary, Fourth Edition: Venture: "An undertaking attended with risk, especially one aiming at making money; business speculation." Adventure: "A hazardous and striking enterprise, a bold undertaking in which hazards are to be met and issue hangs upon unforeseen events." Joint Adventure:". . . A special combination of two or more persons, where, in some specific adventure, a profit is jointly sought, without any actual partnership or corporate designation."

A one-half undivided interest in the property constituting the subject matter of the alleged joint adventure was administered by defendant Wachovia Bank and Trust Company as trustee of the estate of Dio Clayton Lewis, an incompetent, by virtue of appointment by the Clerk of Superior Court of Surry County. The title to the property was in the ward of defendant bank, *Cross v. Craven,* 120 N.C. 331, 26 S.E. 940, and the trustee bank could take no action toward the sale of its ward's property without order and approval of the court. G.S. 33-31; *In re Edwards,* 243 N.C. 70, 89 S.E. 2d 746. Further, the contract upon which plaintiff relies to establish a joint adventure specifically provides for court approval.

The relationship of joint adventure did not exist among defendants, since each could not direct the conduct of the others. Neither was there an undertaking attended with risk by which defendants jointly sought a profit. The joint acts of defendants were merely an attempted sale by owners of undivided interests in real property for the purpose of converting a depreciating asset into money. The element of adventure was not present.

Thus evidence admissible against only one defendant was correctly held inadmissible against other defendants; neither was an

agency relationship created among defendants so as to constitute each a principal and the agent of the others.

Absent the relationship of joint adventure, it is clear that the entry of judgment of nonsuit as to defendants R. J. Lovill, Jr., Henry B. Rowe, Jr., Gladys W. Lovill, J. Walter Lovill, Jr., Edward F. Lovill and Margaret Lovill Martin, was correctly entered.

We must therefore consider whether the trial court erred in allowing motion for nonsuit as to defendant Wachovia Bank and Trust Company, Trustee for Dio Clayton Lewis.

Plaintiff relied on breach of alleged contract embodied in a letter dated May 5, 1965, from W. P. Sandridge, Jr., attorney for defendant Wachovia Bank and Trust Company. Plaintiff contends that this letter affording him an opportunity to bid at a resale of the property became a bilateral contract when he signed and returned same to Mr. Sandridge.

The heart of a contract is the intention of the parties, which is ascertained by the subject matter of the contract, the language used, the purpose sought, and the situation of the parties at the time. 2 N. C. Index 2d, Contracts § 12, p. 315; *Sell v. Hotchkiss*, 264 N.C. 185, 141 S.E. 2d 259; *Bank v. Courtesy Motors*, 250 N.C. 466, 109 S.E. 2d 189. There must be a meeting of the minds so that the parties assent to the same thing in the same sense. *Sprinkle v. Ponder*, 233 N.C. 312, 64 S.E. 2d 171. The facts of the instant case create substantial doubt that there was such meeting of the minds between defendant Bank and plaintiff. However, appellee, Wachovia Bank and Trust Company, contends that, in any event, it could not be responsible in damages for breach of contract to allow plaintiff to bid on property of its ward at a resale, when its trustee capacity was disclosed, so as to give notice that the sale could not be made without court proceeding.

The power of a guardian (sometimes, as here, designated trustee by authority of G.S. 33-1 when referring to the keeper of an adult) to make disposition of his ward's estate is very carefully regulated, and the sale is not allowed except by order of court, which order must have the supervision, approval and confirmation of the resident judge of the district or the judge regularly holding the courts of the district. *Morton v. Lumber Co.*, 178 N.C. 163, 100 S.E. 322; G.S. 1-339.28 and G.S. 33-31.

Plaintiff could not have been afforded the opportunity to bid without an upset bid and an order of resale by the court.

> "An upset bid is an advanced, increased or raised bid whereby a person offers to purchase real property theretofore sold, for an amount exceeding the reported sale price by ten percent

(10%) of the first $1000 thereof plus five percent (5%) of any excess above $1000, but in any event with a minimum increase of $25, such increase being deposited in cash, or by certified check or cashier's check satisfactory to the said clerk, with the clerk of the superior court, with whom the report of the sale was filed, within ten days after the filing of such report: . . ." G.S. 1-339.25(a), and "When an upset bid is submitted to the clerk of the superior court, together with a compliance bond if one is required, a resale shall be ordered." G.S. 1-339.27(a).

However, when a guardian of an incompetent person sells real property under order of court, he is merely an agent of the court and the sale is not consummated until it is confirmed by the resident judge or the judge regularly holding courts in the district. (When the sale is originally ordered by the clerk, his confirmation is also required.) This confirmation represents the consent of the court and is granted or refused in the discretion of the court. *Harrell v. Blythe,* 140 N.C. 415, 53 S.E. 232; G.S. 1-339.28.

In the case of *LeRoy v. Jacobosky,* 136 N.C. 443, 48 S.E. 796, H. Jacobsky and A. Jacobosky were owners of real property as tenants in common with three minors. H. Jacobosky was general guardian for the minors. H. Jacobosky entered into a written agreement to sell the entire property to plaintiff and signed the agreement as follows:

"Jacobosky Bros.
"H. Jacobosky,
"Guardian of Simon, Fannie and Sadie Weisel.
"J. H. LeRoy.
"S. H. Weisel."

Subsequently, the property was sold under proper court order to B. F. White and J. B. Flora. The sale was confirmed and the purchasers received title. Defendants refused to convey to plaintiff when he duly tendered the correct contract price. There was evidence that plaintiff knew nothing about the minors' ages, but that after the execution of the agreement H. Jacobosky informed plaintiff it would be necessary to get a court order because of the minor children. Plaintiff brought action seeking damages for the difference in contract price of the entire property and the amount for which the entire property sold. The trial judge gave peremptory instruction for damages on the interest of H. Jacobosky and A. Jacobosky. Plaintiff appealed. Holding that H. Jacobosky was not personally liable in respect to the interest of the infant wards, the Court stated:

" 'The general rule is that whenever a party assumes to act as agent for another, if he has no authority, or if he exceed his

authority, he will be held to be personally liable to the party with whom he deals, for the reason that by holding himself out as having authority he misleads the other party into making the agreement. But the rule is founded upon the supposition * * * that the want of authority is unknown to the other party, or, if known, that the agent undertakes to guaranty a ratification of the act, and when this want of authority is known, and it is clear that the agent did not undertake to guarantee a ratification, it results that the agent is not personally bound.' . . . 'In the absence of all agreement, express or implied, to be personally bound, there can be no case, we apprehend, in which an agent has been held responsible who has not been guilty of fraud either actual or constructive.' *Fowle v. Kerchner, supra.* There can be no fraud when the person with whom the agent deals knows that he has no authority to bind his principal, or knows the character and extent of his agency."

" 'If the party with whom the agent has contracted knew that the agent had no authority, or was cognizant of all the facts upon which the assumption of authority was based — as for example, when both parties labored under a mistake of law with reference to the liability of the principal — the agent is not liable either in tort or upon the contract.' "

In the case of *Joyner v. Crisp,* 158 N.C. 199, 73 S.E. 1004, the *feme* plaintiff owned certain property for her life, and after her death it belonged to her children, some of whom were minors. She entered into an option to convey the fee in the lands, which option was made subject to a decree to be obtained in court confirming the fee in her and ordering conveyance of the land to be made to the defendant. The defendant admitted in his answer that he knew that the land in fee belonged to plaintiff's children. *Feme* plaintiff and her husband brought action to set aside the option contract, and the defendant, among other things, in his answer set up a counter-claim asking for specific performance of the contract. The lower court ruled in favor of the plaintiffs and dismissed defendant's cross action. Affirming the action of the lower court, this Court said:

"The plaintiffs in this case had no power to enter into a contract to sell their children's land, and a mere promise to resort to a court for the purpose of decreeing a sale of it cannot possibly be enforced, for it is beyond the power of the plaintiffs to predicate what the judgment of the court may be.

"Upon this principle it is held that a party cannot recover upon a contract wherein a guardian, who owned certain interest

in land of which his ward was part owner, agreed to institute and to carry through court proceedings necessary to the consummation of a sale or exchange of such property. . . .

"For the reasons given, we think the contract is one which cannot be specifically performed, nor can the defendant recover damages for a failure on the part of the plaintiff to perform it."

*Love v. Harris*, 156 N.C. 88, 72 S.E. 150, is a case in which the purchaser at a valid mortgage sale refused to comply with the terms of the bid and on the same day the land was again put to sale under the mortgage without the consent of the mortgagor and after the bidders had left, and was at that time bid in by plaintiff. The first purchaser subsequently agreed to take the land according to the original sale and deed was made to him. Plaintiff brought action to recover damages of defendant mortgagee for failure to comply with the second bid. At the close of the evidence the judge allowed defendant's motion for nonsuit. Affirming the action of the lower court, this Court stated:

"The plaintiff cannot recover upon the ground that the mortgagee assumed to exercise a power to sell which he did not have and that he was thereby misled or deceived to his injury, for the simple reason that he bought with full knowledge of all the facts, and as he is presumed to know the law, he was fixed with notice of the fact that the mortgagee did not have the power to sell under the circumstances, and, therefore, he was in no sense defrauded.

". . . Ruffin, J., in *Fowle v. Kerchner*, says: 'The general rule is that whenever a party assumes to act as agent for another, if he has no authority, or if he exceeds his authority, he will be held to be personally liable to the party with whom he deals, for the reason that by holding himself out as having authority, he misleads the other party into making the agreement. But the rule is founded upon the supposition . . . that the want of authority is unknown to the other party, or, if known, that the agent undertakes to guarantee a ratification of the act, and when this want of authority is known, and it is clear that the agent did not undertake to guarantee a ratification, it results that the agent is not personally bound.' "

*LeRoy v. Jacobosky, supra,* and *Joyner v. Crisp, supra,* were cited with approval in the case of *Griffin v. Turner*, 248 N.C. 678, 104 S.E. 2d 829. There, the administrator of an estate authorized an agent to sell certain land belonging to the estate. The agent entered

into agreement to sell the land and executed a receipt for deposit of good faith money on purchase to one Griffin. The receipt was signed by the agent, as agent for G. L. Turner and Willie E. Turner, administrators of E. F. Turner Estate. Plaintiff brought action alleging defendants refused to comply with the alleged authorized contract. The heirs of E. F. Turner, deceased, denied any authority on the part of the codefendants to bind them. The trial judge allowed defendants' motion for nonsuit at the end of the evidence. This Court reversed the decision of the lower court as to the defendants W. E. Turner and G. L. Turner, and affirmed the lower court as to the remaining defendants, and stated:

. "Title to real estate, upon the death of an owner, vests in the heirs and not in the administrators. The personal representative has no power as such to convey. *Parker v. Porter,* 208 N.C. 31, 179 S.E. 28; *Floyd v. Herring,* 64 N.C. 409. Plaintiff was aware of this fact when he paid his ten dollars to Webb. The receipt given by Webb calls for payment of the balance of the purchase price when good and sufficient deed was tendered by the heirs at law and not by the administrators for whom Webb acted.

"Plaintiff does not assert that any express warranty of authority existed to bind the heirs. His position is that when one contracts as an agent to convey land, the law will imply a warranty of authority to act. The law does imply a warranty when the party with whom the contract is made does not know the true facts and does not know that in truth and in fact the person sought to be bound is lacking in authority. When, however, the person who claims to be protected knows that the person in whose name and behalf the contract is made in fact has no authority to act, the law will not imply a warranty to act. It would be palpably unjust to create a fiction for the benefit of one who acted with knowledge of facts which are at complete variance with the proposed fiction. Hence, we have heretofore held that when one contracts as administrator to convey land, who has no personal right therein, he is not liable on an implied warranty because the heirs at law are not bound by the contract. *Hedgecock v. Tate,* 168 N.C. 660, 85 S.E. 34; Ann. Cas. 1916D 449. For the same reason a guardian who contracts to convey the property of his ward is not liable on an implied warranty of authority. *Leroy v. Jacobosky,* 136 N.C. 443, 67 L.R.A. 977. These cases but illustrate the principle which finds full support in numerous other cases. *Joyner v. Crisp,* 158 N.C. 199, 73 S.E. 1004; *Love v. Harris,* 156 N.C. 88, 72 S.E. 150; *Hite v. Goodman,* 21 N.C. 364; *Potts v. Lazarus,* 4 N.C. 180; *Fuller v.*

*Melko,* 76 A. 2d 683 (N.J.); 3 C.J.S. 117 and 118; 2 Am. Jur. 249."

It is a well recognized principle of law in this jurisdiction that the laws in force at the time of the execution of a contract become a part of the contract. This embraces laws which affect the contract's validity, construction, discharge and enforcement. *Spearman v. Burial Association,* 225 N.C. 185, 33 S.E. 2d 895; *Bateman v. Sterrett,* 201 N.C. 59, 159 S.E. 14.

*Harris v. Trust Co.,* 205 N.C. 526, 172 S.E. 325, poses the question: "Is a letter written by the attorneys for the executors of an estate, authorizing a real estate agent to sell land belonging to an estate, sufficient evidence of agency to bind the estate in the absence of proof of either express or implied authority conferred upon the executors to sell and convey real property?" Holding that the estate was not bound, the Court stated:

> "At the outset the plaintiff knew that he was dealing with the representatives of a dead man, and consequently the law imposed upon him the duty of ascertaining the extent of the authority of the parties to dispose of the real estate. The power of personal representatives to contract with respect to real property of decedent is limited and fenced in both by statute and the decisions."

This case differs from the instant case in that in the former specific performance is sought and the action is against executors in their representative capacity; however, the holding as to notice of the representative capacity of defendants is pertinent to decision in the instant case.

Appellant cites and relies on the case of *Warren v. Dail,* 170 N.C. 406, 87 S.E. 126, to distinguish the holding in the case of *Joyner v. Crisp, supra.* In *Warren v. Dail,* it is said:

> "In *Joyner v. Crisp* it was held that the obligations of the contract, the subject-matter of litigation, were to be performed as an entirety, and the parties were relieved of same, and of all liability thereunder because it appeared on the face of the contract itself that, in substantial and material features, there was an inability to perform. The portions of the opinion as to the effect of notice must be understood in reference to the conditions there presented, and are not applicable to the facts of this record."

> "If a complaint states facts constituting a cause of action for specific performance, and also one for damages for a breach

of contract, a failure of the first will not prevent his recovery on the second, whatever may have been the prayer for relief, citing *Sternburger v. McGowan*, 12-20 and 21. And, assuredly, in the absence of any facts tending to show fraud or imposition, avoiding the contract or creating an estoppel, damages for wrongful breach of contract to convey are not now denied merely because the party seeking relief was aware, at the time of the contract, or before suit, that the other had no title. It is well understood that many contracts of this kind are entered into under just these circumstances, the parties believing they could obtain the title, and being allowed till the time of trial to procure and tender it. . . ."

*Warren v. Dail* and *Joyner v. Crisp* are distinguishable factually in that in *Warren* the facts do not show that the remaindermen are minors so as to require legal action as a condition precedent to sale of the entire interest of the property, as was true in the case of *Joyner v. Crisp*. It is also clear that *Warren v. Dail* does not overrule *Joyner v. Crisp*. Plaintiff correctly states that the rules laid down in *Joyner v. Crisp* and *LeRoy v. Jacobosky* exclude cases where the agent receives the consideration for the contract, as in the cases of *Russell v. Koonce*, 104 N.C. 237, 10 S.E. 256, and *Delius v. Cawthorn*, 13 N.C. 90. Here, defendant Wachovia Bank and Trust Company received no part of the consideration.

Plaintiff must have known that defendant Bank, as trustee, was acting in a capacity in which it could only deliver a perfect title under order and direction of the court. Had defendant Bank tendered plaintiff a deed without court confirmation, plaintiff would not have been obliged to accept it. The letter clearly shows that control of the sale was already vested in the court, and the writer of the letter recognized that it must there remain.

The record reveals that Wachovia Bank and Trust Company exhausted every means to properly obtain a resale of the property, except to prosecute an appeal to this Court. The action of the resident judge relating to confirmation of the sale was discretionary, *Harrell v. Blythe, supra,* and appellant has failed to show abuse of discretion on the part of the resident judge.

The existing law became a part of the contract, and plaintiff was clearly charged with notice that defendant Wachovia Bank had no authority to act without order, direction and confirmation of the court. The facts do not disclose that defendant Bank undertook to guarantee a ratification of any of its acts.

In order to recover compensatory damages in a contract action, plaintiff must show that the damages were the natural and probable

result of the acts complained of and must show loss with a reasonable certainty, and damages may not be based upon mere speculation or conjecture. *Lieb v. Mayer,* 244 N.C. 613, 94 S.E. 2d 658; *Gay v. Thompson,* 266 N.C. 394, 146 S.E. 2d 425.

Here, if plaintiff technically had a good cause of action, he could only recover nominal damages. If defendant Bank had successfully prevailed on the court to order a resale, plaintiff would have had no assurance that he could purchase the property. He would, at most, have had a right to *bid* at public sale. G.S. 1-339.27. There could have been no compensatory damages as a consequence of the failure of defendant Bank to obtain an order of resale.

We have carefully examined all of plaintiff's remaining exceptions and assignments of error and find no prejudicial error.

Affirmed.

HUSKINS, J., took no part in the consideration or decision of this case.