**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: DEVOTION ASSOCIATES,
LIMITED, a limited partnership,
<u>Debtor,</u>

DEVOTION ASSOCIATES, LIMITED, a
North Carolina limited partnership;
E. HAROLD KEITH; RALPH K. INGRAM,
<u>Plaintiffs-Appellants,</u>

v.                                                                       No. 95-1939

ROBERT M. ALLEN, JR.; CULPEPPER
LAND & CATTLE COMPANY,
INCORPORATED; RICHARD M.
CROWDER, JR.; CROWDER REALTY &
INVESTMENT COMPANY, INCORPORATED,
d/b/a Crowder Realty, Incorporated,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, District Judge.
(BK-91-449-TMM)

Argued: April 4, 1996

Decided: May 20, 1996

Before WILKINSON, Chief Judge, ERVIN, Circuit Judge, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Brent Earl Wood, Raleigh, North Carolina, for Appellants. Urs Roland Gsteiger, WILSON & ISEMAN, L.L.P., Winston-Salem, North Carolina, for Appellees Allen and Culpepper Land & Cattle; James Anthony Penry, WYRICK, ROBBINS, YATES & PONTON, L.L.P., Raleigh, North Carolina, for Appellees Crowder and Crowder Realty.

―――――――――――――――――――――――――――――――――

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

―――――――――――――――――――――――――――――――――

**OPINION**

PER CURIAM:

In this diversity case, appellant Devotion Associates, Ltd., asserts a host of state law claims in connection with a court-approved bankruptcy sale of its property. The bankruptcy court rejected several of the allegations on summary judgment, and the district court dismissed the remaining ones. We now affirm.

I.

In 1979, Devotion purchased a piece of property in North Carolina, with the hope of converting it into separate tracts of land for weekend homes. Efforts to develop the property failed, however. In 1990, Devotion defaulted on a payment due on one of its notes, and foreclosure proceedings were initiated.

To avoid the impending foreclosure, Devotion filed a petition for relief under Chapter 11 of the Bankruptcy Code on January 31, 1991. During this time, appellant E. Harold Keith, a partner in Devotion, was attempting to market the property to potential buyers. He enlisted the assistance of several realtors, including appellee Robert M. Allen, Jr.

Devotion filed a modified plan of reorganization with the bankruptcy court on September 13, 1991 (the court had refused the initial plan). Under the modified plan, all creditors would be paid in full by November 30, 1991, using proceeds from the sale of the Devotion property. The bankruptcy court set a confirmation hearing regarding this plan for October 1, 1991.

In late September 1991, Allen advised Keith that he had found a group of individuals who were interested in purchasing the property. Evidently to protect the buyers' identities, the sales contract listed appellee Culpepper Land & Cattle Co., a company Allen had formed to buy and sell real estate, as the purchaser -- Culpepper was to resell the property to the ultimate buyers. The contract specified a selling price of $1.7 million. Importantly, the agreement also contained a broad termination clause allowing Culpepper to rescind "for any reason" by giving notice by November 1, 1991.

Devotion presented the contract to the bankruptcy court at the October 1 confirmation hearing. In testimony that he now admits was exaggerated, Allen informed the court that there were three ultimate purchasers who had made commitments to him, and that if necessary, Culpepper had the resources to purchase the property itself. The court approved the contract, and the parties then executed it.

Allen, though, was unable to complete the sale to the prospective buyers for $1.7 million. There is some dispute whether Allen misled Keith about the commitment he had obtained from the unidentified purchasers. At any rate, on October 23, Allen approached another potential buyer, Charles McKinney, who had previously expressed an interest in the property. McKinney responded on October 30 with an offer of $1.4 million.

On October 31, Allen informed Keith that he had failed to finalize the sale at the $1.7 million price. But, Allen told Keith, an amended contract with a new price of $1.4 million was available for his approval. The next day, November 1, Allen (on behalf of Culpepper) terminated the original contract pursuant to its termination clause, and Keith (on behalf of Devotion) executed the amended agreement selling the property for $1.4 million. The bankruptcy court approved the

3

amended contract on November 15, and the transaction closed on November 26.

Devotion then filed this suit on August 12, 1993, alleging several state law causes of action, including breach of contract and implied duty of good faith, interference with contract, fraud, breach of fiduciary duty, and unfair trade practices. On October 14, 1994, the bankruptcy court rejected the first two claims on summary judgment. The district court held a jury trial on the remaining claims on April 3-12, 1995. After Devotion presented its case, the district judge dismissed these claims as a matter of law, primarily for failure to prove damages. Devotion now appeals from both the bankruptcy and district court rulings.

II.

We first consider Devotion's appeal from the bankruptcy court's award of summary judgment on its claims of breach of contract and implied duty of good faith and interference with contract. We agree with the bankruptcy judge that there was no breach of contract or interference with contract here. The termination clause, of which Devotion was aware when it executed the contract, gave the buyer (Culpepper) an absolute right to void the contract by giving notice on or before November 1, 1991.[1] Culpepper, consequently, was essentially under no obligation to purchase the property for $1.7 million, and it gave timely notice of termination on November 1. Keith, moreover, was sufficiently sophisticated in real estate matters to fully grasp the import of the agreement's terms. In short, there simply was

_____

[1] The termination clause reads:

> If, after the expiration of the inspection period[on November 1, 1991], Buyer shall, for any reason in Buyer's sole discretion, judgment and opinion, disapprove or be dissatisfied with any aspect of the Land, the improvements, or any item examined by Buyer . . . then Buyer shall be entitled to terminate this Agreement by giving written notice thereof to Seller on or before November 1, 1991 . . . whereupon this Agreement shall automatically be rendered null and void and thereafter neither Seller nor Buyer shall have any further obligation or liabilities to the other hereunder.

4

no contractual breach or interference with contract-- the terms were wholly complied with. With respect to a duty of good faith, meanwhile, an "implied duty of good faith cannot be used to override or modify explicit contractual terms." Riggs Nat'l Bank v. Linch, 36 F.3d 370, 373 (4th Cir. 1994).

III.

We turn next to Devotion's appeal from the district court's dismissal as a matter of law of its actions for fraud, breach of fiduciary duty, and unfair trade practices. These claims all share a common shortcoming -- the inability to establish damages. Devotion signed a contract selling the property for $1.4 million. It had not received any concrete offers at a higher price, except the $1.7 million contract that fell through. And the $1.7 million offer cannot form the basis of a damage recovery because it was properly rescinded under the termination clause. Any reference to other potential offers is speculative, and thus cannot establish damages. E.g., Pike v. Wachovia Bank and Trust Co., 161 S.E.2d 453, 466 (N.C. 1968). In fact, the sales price of $1.4 million seems most reasonable -- the bankruptcy court valued the property at $1.17 million and Devotion's own appraiser had estimated a value of $1.38 million.

Devotion asserts that it should be entitled to the "benefit of its bargain," or the difference between the initial $1.7 million contract and the eventual $1.4 million selling price. Leaving aside whether a benefit of the bargain theory can be invoked where the "bargain" price is one that can be terminated essentially at will, the theory typically applies when a buyer makes a purchase in reliance on a seller's misrepresentations and the buyer seeks the difference between the represented value and the actual value. See 37 Am. Jur. 2d, Fraud and Deceit, § 353 (1968). Here, however, Devotion is the seller, not the buyer, and so the benefit of the bargain theory is inapplicable.

Devotion, in short, cannot establish that it suffered damages on account of any fraud, breach of fiduciary duty, or unfair trade practice. It simply has no reason to complain -- it executed the $1.7 mil-

5

lion contract knowing that the agreement could be terminated at will, and it executed an amended contract for sale at a price of $1.4 million.**2**

IV.

For the foregoing reasons, the judgments of the bankruptcy and district courts are hereby

AFFIRMED.

_____

**2** We also reject Devotion's argument that it suffered damages from selling certain personal property and parcels of land that, in Devotion's view, should not have been among the items sold. The contested items were included in the contract that Devotion signed.

6