WILLIAM H. JONES, IV, PATRICIA P. JONES, AND WILLIAM H. JONES, III, PLAINTIFFS v. TRESSA E. SHOJI; DEFENDANT, AND THE YOUNG MEN'S CHRISTIAN ASSOCIATION OF FAYETTEVILLE, NORTH CAROLINA, INC.; DEFENDANT-APPELLEE AND THE MOST REVEREND F. JOSEPH GOSSMAN, BISHOP OF THE ROMAN CATHOLIC DIOCESE OF RALEIGH, NORTH CAROLINA AND HIS SUCCESSORS IN OFFICE; AND THE ROMAN CATHOLIC DIOCESE OF RALEIGH, NORTH CAROLINA, DEFENDANTS-CROSS-CLAIMANTS, APPELLANTS

No. 225A93

(Filed 17 June 1994)

**Indemnity § 7 (NCI4th) — joint venture — day care program — accident in van — crossclaim**

The trial court properly denied a crossclaim by defendant Church where the YMCA and the Catholic Diocese of Raleigh entered into a joint venture by written contract to operate a day care program; the contract provided that the Church was to provide access to the Church grounds and vans; the contract required the Church to carry insurance on the vans for the YMCA and that the YMCA would maintain $1,000,000 liability coverage; one of the vans was involved in an accident; plaintiffs settled and Aetna, the insurer of the van, paid the settlement funds, which did not exhaust the policy limits; and the Church crossclaimed against the YMCA for indemnity or contribution. The evidence supports the finding that the Church was required to maintain liability insurance on the vans for the joint venture in that the specific language that the Church would insure the vans controls the general language addressing the YMCA's responsibility for obtaining liability insurance; the parties' procured liability policies of which only the Church's covered liability for the vans; the Church listed an after-school employee as the driver of the vans; and the contract specifically states that the van insurance was maintained for the joint venture. Because the insurance proceeds were joint venture property and were sufficient to cover plaintiffs' claims, the Church is not entitled to indemnity or contribution.

**Am Jur 2d, Indemnity §§ 28 et seq.**

Appeal of right by defendant Church pursuant to N.C.G.S. § 7A-30(2) of a decision by a divided panel of the Court of Appeals, 110 N.C. App. 48, 428 S.E.2d 865 (1993), affirming an order denying

a crossclaim by one of the defendants entered on 7 February 1992 by Hudson, J., in Superior Court, Cumberland County. On 1 July 1993 this Court allowed discretionary review of an additional issue. Heard in the Supreme Court 15 November 1993.

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Nigle B. Barrow, Jr. and Michael W. Mitchell, for defendant-cross-claimants appellants (Bishop and Church).*

*Reid, Lewis, Deese & Nance, by James R. Nance, Jr., for defendant-appellee (YMCA).*

WHICHARD, Justice.

In 1986 the Young Men's Christian Association [hereinafter "the YMCA"] and the Most Reverend F. Joseph Gossman and the Roman Catholic Diocese of Raleigh, North Carolina, through the Good Shepherd Catholic Church of Hope Mills, North Carolina [hereinafter collectively "the Church"], entered into a joint venture by written contract to operate an after school day care program. The contract recited the responsibilities of the parties, which included that the YMCA was to develop the after school programs and the Church was to provide access to the church grounds and vans. The contract also stated that the Church "shall carry insurance on their van and the parish member's van for the YMCA" and that "[t]he YMCA shall maintain liability coverage of $1,000,000."

The contract expired by its terms on 31 December 1986, but the parties continued to follow the agreement until 12 October 1987. On that date Tressa Shoji, an after school employee, drove a van full of children enrolled in the after school program to a park. The Church had provided the van. On Shoji's return trip, she took her eyes off the road, swerved to avoid a sign, and struck an automobile driven by plaintiff William H. Jones, IV. Jones was injured in the accident; he and his parents brought this action against Shoji alleging active negligence, and against the YMCA and the Church alleging imputed negligence based on defendant Shoji's agency relationship with the YMCA and the Church. Plaintiffs settled and then dismissed their claims against defendants and executed releases as to all defendants. Aetna, insurer of the van, paid the settlement funds, which did not exhaust the policy limit. Based on the payment of the settlement funds, the Church crossclaimed against the YMCA for indemnity or contribution. On

7 February 1992 the trial court denied the Church's crossclaim. The Church appealed to the Court of Appeals, and the majority there affirmed the trial court, holding that the Church was not entitled to indemnity or contribution from the YMCA because the settlement funds were assets of the joint venture. *Jones v. Shoji*, 110 N.C. App. 48, 428 S.E.2d 865 (1993). Judge Greene dissented, and the Church exercised its right to appeal pursuant to the dissent.

For the reasons given herein, we now affirm the Court of Appeals. As to the additional issue brought forward by the Church on discretionary review, we conclude that discretionary review was improvidently allowed.

The trial court found that the contract required the Church to maintain insurance for the vans for the YMCA and that Aetna carried the primary coverage on the vans. The court also found that plaintiffs' complaint alleged a joint venture between the Church and the YMCA. The court concluded that as joint venturers the Church and the YMCA were derivatively negligent for the acts of the joint venture employee, defendant Shoji. The court further concluded that the Church was not entitled to contribution or indemnity from the YMCA.

The Church does not dispute the existence of a joint venture between the parties. We therefore must determine whether the evidence supported the trial court's finding that the Church maintained the liability insurance for the vans for its co-venturer, the YMCA. We then must determine whether the Church was entitled to indemnity or contribution from the YMCA as a matter of law.

The evidence supports the trial court's finding that the Church was required to maintain liability insurance on the vans, from which the settlement was paid, for the joint venture. The language of the contract between the parties provided that the Church would carry insurance on the vans "for the YMCA." Thus, the contract expressly stated that the Church would insure the vans. The determinative factor is whether the Church was required to carry both collision and liability insurance on the vans given that the contract also stated that the YMCA would maintain $1,000,000 in liability insurance.

The principle that the specific controls the general, often employed in statutory construction, informs our interpretation of

this language. *See Smith v. Mitchell*, 301 N.C. 58, 67, 269 S.E.2d 608, 614 (1980) (applying principle to interpretation of preemptive covenant in deed). The provisions for the van insurance and the liability insurance are the only ones in the agreement that address insurance. The specific language that the Church would insure the vans controls the general language addressing the YMCA's responsibility for obtaining liability insurance. It exempts the van insurance, both collision and liability, from the YMCA's responsibility. Had the parties intended otherwise, logic suggests that they would have included language indicating that the liability insurance on the vans would be purchased separately by the YMCA, while the Church would maintain only collision insurance on the vans.

The parties' actions in following the contract indicate that our interpretation implements their intent. The trial court had the policies before it as evidence, as well as the deposition of an insurance agent who interpreted the coverage of the YMCA's liability policy. The deposition was submitted by agreement of the parties as evidence. Both the Church and the YMCA carried liability insurance; however, only the Church's insurance covered liability for the vans. The YMCA's policy covered liability in other areas involved in the joint venture. In addition to general liability coverage for such areas as property damage, independent contractors, operations on the Church's premises, and professional liability coverage, the YMCA's policy covered non-owned automobiles, *i.e.*, those not owned but used by the YMCA. According to the insurance agent, however, this coverage would only become operative if the non-owned automobile was not covered by another policy. Because the Church carried liability coverage on the vans, the YMCA's automobile liability insurance did not apply to the vans. Aetna, which paid the settlement, was the primary carrier for the vans. The parties' actions in procuring these types of policies support the trial court's interpretation that their intent was for the Church to maintain liability insurance on the vans for the joint venture. As Chief Justice Stacy stated in *Cole v. Fibre Co.*, 200 N.C. 484, 487, 157 S.E. 857, 858 (1931):

> The general rule is, that where, from the language employed in a contract, a question of doubtful meaning arises, and it appears that the parties themselves have interpreted their contract, practically or otherwise, the courts will ordinarily follow such interpretation, for it is to be presumed that the

parties to a contract know best what was meant by its terms, and are least liable to be mistaken as to its purpose and intent.

*See also Peaseley v. Coke Co.*, 282 N.C. 585, 601, 194 S.E.2d 133, 144 (1973) ("The best evidence of the intention of the parties to a contract is the practical interpretation given to their contracts by the parties while engaged in their performance.").

The trial court also had before it evidence that the Church listed defendant Shoji as an operator of the vans and that Shoji was an insured driver, which further supports the finding that the Church maintained the insurance for the joint venture. Finally, we note that the language of the contract specifically states that the van insurance was "for the YMCA." This language indicates that the van insurance was maintained for the joint venture. Based on the foregoing, we conclude that the evidence supported the trial court's finding that the liability insurance on the vans was maintained by the Church as one of its responsibilities under the joint venture.

As to whether the Church is entitled to indemnity or contribution from the YMCA, we have stated, "A joint [venture] is in the nature of a kind of partnership, and although a partnership and a joint [venture] are distinct relationships, they are governed by substantially the same rules." *Pike v. Trust Co.*, 274 N.C. 1, 9, 161 S.E.2d 453, 460 (1968). The Court of Appeals correctly looked to partnership law, codified in the Uniform Partnership Act [hereinafter "UPA"], for guidance in resolving this issue.

Section 59-38(a) of the UPA provides: "All property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership, is partnership property." N.C.G.S § 59-38(a) (1989). This principle holds true for property bought on account of a joint venture. We have recognized previously that parties to a contract may allocate the risk of loss by agreeing that one party shall maintain insurance in order to save harmless the other party from liability. *See Casualty Co. v. Waller*, 233 N.C. 536, 537-38, 64 S.E.2d 826, 827-28 (1951). As discussed *supra*, the Church maintained the liability insurance on the vans for the joint venture; the settlement proceeds from the insurance therefore were property of the joint venture. Because the insurance proceeds were joint venture property and were sufficient to cover plaintiffs' claims, the Church is not entitled to indemnity or contribution. Section 59-48(2) of the UPA provides:

**IN RE BULLOCK**

[336 N.C. 586 (1994)]

"The partnership must indemnify every partner in respect of payments made and personal liabilities reasonably incurred by him in the ordinary and proper conduct of its business, or for the preservation of its business or property." N.C.G.S. § 59-48(2) (1989). This law applies as well to a joint venture. Here, the Church has incurred no "personal liabilities" and has made no "personal payments"; rather, the joint venture incurred the liabilities and the insurance maintained for its protection covered the settlement payment. Thus, the Church is not entitled to indemnity from the YMCA.

Similarly, the Church is not entitled to contribution from the YMCA. To be entitled to contribution, the Church would have to show that it paid more than its pro rata share in the settlement. *See* N.C.G.S. § 1B-1(b) (1983) ("The right of contribution exists only in favor of a tort-feasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share."). The Church paid nothing of its own; therefore, it did not pay more than its pro rata share and is not entitled to contribution.

Accordingly, on the issue presented by virtue of the dissent in the Court of Appeals, the decision of the Court of Appeals is affirmed. As to the issue presented on discretionary review, we hold that discretionary review was improvidently allowed.

AFFIRMED IN PART; DISCRETIONARY REVIEW IM-PROVIDENTLY ALLOWED IN PART.