Azalea Garden Bd. & Care, Inc. v. Vanhoy, 2009 NCBC 8.

| | |
|---|---|
| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| DAVIDSON COUNTY | 06 CVS 0948 |

AZALEA GARDEN BOARD & CARE, INC.,

        Plaintiff,

v.

MEREDITH DODSON VANHOY, Personal Representative of the Estate of Ricky C. Dodson, Deceased; LARRY S. GIBSON, NINA G. GIBSON, DANIEL W. TUTTLE; TIMOTHY D. SMITH; and HARVEY ALLEN, JR.,

        Defendants.

**ORDER & OPINION**

{1}    This matter is before the Court on Defendant Daniel W. Tuttle's ("Tuttle") Motion for Summary Judgment and Memorandum of Law in Support of Daniel W. Tuttle's Motion for Summary Judgment, dated March 31, 2008. For the reasons set forth below, the Court hereby **GRANTS** partial summary judgment.

*Biesecker, Tripp, Sink & Fitts by Joe E. Biesecker and Christopher A. Raines for Plaintiff Azalea Garden Board & Care, Inc.*

*Sharpless & Stavola, P.A. by Frederick K. Sharpless for Defendant Meredith Dodson Vanhoy.*

*Randolph M. James, P.C. by Randolph M. James for Defendant Timothy D. Smith.*

*Spilman Thomas & Battle, PLLC by Jeffrey D. Patton and Nathan B. Atkinson for Defendant Daniel W. Tuttle.*

*Brooks Pierce McLendon Humphrey & Leonard, LLP by Benjamin R. Norman and James C. Adams, II for Defendant Harvey Allen.*

Tennille, Judge.

## I.

## FACTS

{2}    This is a suit for damages for the alleged failure of Defendants to fulfill a contract (the "Contract") to purchase Azalea Gardens Board & Care's ("Plaintiff") Brookside of Winston-Salem Rest Home ("Brookside").  Brookside is a nursing care facility located in Winston-Salem, North Carolina.  The Contract was signed on May 6, 1999, on behalf of Plaintiff as seller by David H. Wagner ("Wagner"),[1] owner and President of Plaintiff.  (Def.'s Br. Supp. Mot. Summ. J. 2; Pl.'s Br. Opp'n Mot. Summ. J. 2.)  Defendant Nina Gibson ("N. Gibson") and Defendant Timothy Smith ("Smith") signed individually as purchasers.[2]  (Def.'s Br. Supp. Mot. Summ. J. 2; Pl.'s Br. Opp'n Mot. Summ. J. 2.)  On July 20, 1999, N. Gibson and Smith executed a modification of the Contract (the "Modification").  (Def.'s Br. Supp. Mot. Summ. J. 2; Pl.'s Br. Opp'n Mot. Summ. J. 2.)  Ultimately, the transaction fell through, and the closing of the Brookside purchase never occurred.  (Compl. ¶ 14; Def.'s Br. Supp. Mot. Summ. J. 2; Pl.'s Br. Opp'n Mot. Summ. J. 4.)  As a result of the failed closing, Plaintiff has filed suit alleging breach of contract and seeking monetary damages. (Compl. ¶¶ 16–18.)

{3}    It is alleged that Tuttle was a member of a joint venture with N. Gibson and Smith, among others, to purchase Brookside pursuant to the Contract.  (Compl. ¶ 8.)  Tuttle, however, was not listed on and did not sign the Contract or the Modification.  (Def.'s Br. Supp. Mot. Summ. J. 2, 4; Pl.'s Br. Opp'n Mot. Summ. J. 2.)  Plaintiff's claim against Tuttle is based exclusively on the allegation that Tuttle was a member of a joint venture formed to purchase Brookside.  (Compl. ¶ 8.)  Tuttle asserts that there are no issues of material fact and he is entitled to a judgment as a matter of law because (1) Plaintiff's claim is barred by the Statute of Frauds since there is no evidence of the alleged joint venture, (2) Plaintiff breached the Contract,

---

[1] Mr. Wagner has a law degree but is not engaged in the private practice of law.

[2] Defendant Smith has settled the claims against him.  The Court previously granted summary judgment in favor of Meredith Dodson Vanhoy, Personal Representative of the Estate of Ricky Dodson, deceased.  That ruling is on appeal.  Defendant Allen's Motion for Summary Judgment is treated separately.

and (3) the liquidated damages provision limits Plaintiff's alleged damages as a matter of law. (Def.'s Br. Supp. Mot. Summ. J. 1.)

{4} A first action was filed against Defendants in Davidson County in 2002 shortly before expiration of the three (3) year statute of limitation for breach of contract. At trial, during Plaintiff's evidence, Plaintiff took a voluntary dismissal without prejudice as to all claims. One (1) day before the one (1)-year period to re-file expired, Plaintiff filed this new suit.[3]

{5} The Court holds that there are genuine issues of material fact to be determined on the question of Tuttle's participation in a joint venture and the breach of contract claim. Furthermore, the Court holds that the liquidated damages provision limits Plaintiff's recovery as a matter of law.

## II.
## LEGAL STANDARD

{6} Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C.R. Civ. P. 56(c). "It is not the purpose of the rule to resolve disputed material issues of fact but rather to determine if such issues exist." *Id.* at 56 cmt. The burden of showing a lack of triable issues of fact falls upon the moving party. *See, e.g., Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). Once this burden has been met, the nonmoving party must "produce a forecast of evidence demonstrating that [it] will be able to make out at least a prima facie case at trial." *Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). The Court must exercise caution in granting a motion for summary judgment. *N.C. Nat'l Bank v. Gillespie*, 291 N.C. 303, 310, 230 S.E.2d 375, 379 (1976).

---

[3] This being a new lawsuit, the Court is not bound by decisions in the previous case.

III.

ANALYSIS

A.

THE ALLEGED JOINT VENTURE

{7}    Plaintiff has produced evidence that makes the following facts true or in dispute with respect to Tuttle's participation in a joint venture to purchase Brookside: Tuttle had an ongoing business relationship with Ricky Dodson[4] ("Dodson") and Smith.  Dodson approached Tuttle and Smith with a proposal to purchase Brookside.  Tuttle took an active role in meetings and discussions regarding the purchase of Brookside.  Prior to the signing of the Contract, Tuttle toured Brookside and brought in persons to inspect Brookside's physical condition and air conditioning system.  Furthermore, Tuttle brought in persons to estimate the cost of upgrades to the facility.

{8}    On May 6, 1999, N. Gibson and Smith signed the Contract in Wagner's office.  Tuttle was in Wagner's office at the time the Contract was signed.  The Modification was executed on July 20, 1999.  Prior to the signing of the Modification, Tuttle spoke with Dodson, N. Gibson, and Smith about the terms of the Modification.  Ultimately, Tuttle agreed to the terms of the Modification.  Moreover, on at least two (2) separate occasions, Tuttle met with N. Gibson to discuss her managing the Brookside facility.

{9}    The parties required financing to purchase Brookside.  James Keen ("Keen") of Branch Banking & Trust ("BB&T") was the banker in charge of originating the loan.  Tuttle is linked to the bank documents originated for the purchase of Brookside.  As a result of this financial information, Tuttle was listed as a co-maker or guarantor of the loan.  Keen testified at his deposition, however, that he understood the buyers would acquire Brookside through an entity called Trillium

---

[4] Ricky Dodson was a broker with The Interstate Companies of America, Inc.  He was retained as Plaintiff's agent for the sale of the Brookside property.  Plaintiff alleged that Mr. Dodson subsequently withdrew from his broker status and became a partner in a joint venture to buy Brookside pursuant to the Contract.  (Compl. ¶ 10.)  Mr. Dodson passed away in October of 2000.  The Personal Representative of Mr. Dodson's estate moved for summary judgment on the basis that Plaintiff failed to file a timely claim within the claim notice period.  This Court, by Order dated February 28, 2008, granted summary judgment as to Mr. Dodson's estate.

Residential Systems, LLC ("Trillium"), which would have included Tuttle as a member.

{10}    The closing of the Brookside purchase was to be conducted by attorney Brian Herndon ("Herndon") of the firm Blanco Tackabery & Matamoros, P.A. Herndon met with Tuttle, Dodson, Smith, N. Gibson and Larry Gibson ("L. Gibson") (collectively "the Gibsons") to discuss the purchase of Brookside. Ultimately, however, the closing never occurred. Instead of Plaintiff retaining the $25,000 earnest money deposit, Dodson returned the earnest money deposit to Tuttle and the Gibsons on October 26, 1999.

{11}    The Statute of Frauds requires that a contract to buy or sell real property be in writing. *See* N.C. Gen. Stat. § 22-2. Specifically, "[a]ll contracts to sell or convey any lands . . . shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized." *Id.* The facts in this litigation are clear—Tuttle did not sign the Contract executed on May 6, 1999 or the Modification executed on July 20, 1999. Consequently, the Statute of Frauds will bar Plaintiff's breach of contract claim against Tuttle unless Plaintiff can establish that someone "lawfully authorized" signed the Contract on Tuttle's behalf.

{12}    Plaintiff contends that the Statute of Frauds does not bar Plaintiff from recovering from Tuttle because Tuttle was a member of a joint venture formed to purchase Brookside. (Compl. ¶ 8.) Plaintiff further asserts that Smith and N. Gibson signed the Contract on behalf of the joint venture thereby making all co-adventurers liable for the alleged breach of contract. (Compl. ¶ 12.)

{13}    In North Carolina, a writing not signed by the party to be charged[5] does not run afoul of the Statute of Frauds when the writing is signed by an authorized agent. *See Lewis v. Allred*, 249 N.C. 486, 489, 106 S.E.2d 689, 692 (1959). "Each member of a joint venture is both an agent for his coadventurer and a principal for himself." *Pike v. Wachovia Bank & Trust Co.*, 274 N.C. 1, 8, 161 S.E.2d 453, 460

---

[5] The "party to be charged" is "the one against whom relief is sought . . . .'" *Lewis v. Murray*, 177 N.C. 17, 19, 97 S.E. 750, 751 (1919).

(1968) (*citing Summers v. Hoffman*, 341 Mich. 686, 696, 69 N.W. 2d 198, 203 (1955)).  The Statue of Frauds is satisfied "if the agent signs in his own name instead of that of his principal . . . ." *Rose v. Vulcan Materials Co.*, 282 N.C. 643, 670, 194 S.E.2d 521, 539 (1973).  Thus, the fact that N. Gibson and Smith signed the Contract in their own individual names does not absolve Tuttle, or the alleged joint venture, from liability.  Given the foregoing, the viability of Plaintiff's claim against Tuttle hinges on the existence of a joint venture in which Tuttle was a participant.

{14}  A joint venture is "an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, but without creating a partnership in the legal or technical sense of the term." *Pike*, 274 N.C. at 8, 161 S.E.2d at 460 (*citing In re Simpson*, 222 F. Supp. 904, 909 (M.D.N.C. 1963)).  An express agreement is not required to prove the existence of a joint venture. *See Rhue v. Rhue* ___ N.C. App. ___, ___, 658 S.E.2d 52, 59 (2008); *see also Wike v. Wike*, 115 N.C. App. 139, 141, 445 S.E.2d 406, 407 (1994).  Rather, intent to create a joint venture can be inferred by the conduct of the parties and the surrounding circumstances. *See Rhue*, ___ N.C. App. at ___, 658 S.E.2d at 59; *see also Wike*, 115 N.C. App. at 141, 445 S.E.2d at 407.  The existence of a joint venture "may be based upon a rational consideration of the acts and declarations of the parties, warranting the inference that the parties understood that they were [co-adventurers] and acted as such." *Davis v. Davis*, 58 N.C.App. 25, 30, 293 S.E.2d 268, 271 (1982) (citing *Eggleston v. Eggleston*, 228 N.C. 668, 674, 47 S.E. 2d 243, 247 (1948)).  "Facts showing the joining of funds, property, or labor, in a common purpose . . . in which each has a right . . . to direct the conduct of the other[s] through a necessary fiduciary relation[ship]" is sufficient for finding the existence of a joint venture. *Pike*, 274 N.C. at 8, 161 S.E.2d at 460; *Cheape v. Chapel Hill*, 320 N.C. 549, 561, 359 S.E.2d 792, 799 (1987).

{15}  In North Carolina, joint ventures are similar to partnerships, and they are "governed by substantially the same rules." *Jones v. Shoji*, 336 N.C. 581, 585, 444

S.E.2d 203, 205 (1994).  A hallmark of a partnership is the sharing of "any profits, income, expenses, joint business property or hav[ing] authority of any kind over each other." *Wilder v. Hobson*, 101 N.C. App. 199, 203, 398 S.E.2d 625, 628 (1990).

{16}   In this case there is no express written agreement creating a joint venture between the Defendants.  Thus, for Tuttle to be liable, a joint venture must be inferred from the conduct of the parties and the surrounding circumstances.  *See Rhue*, ___ N.C. App. at ___, 658 S.E.2d at 59.

{17}   Evidence of Tuttle's alleged membership in a joint venture is a closer call than that of Defendant Allen.[6]  Taken in a light most favorable to Plaintiff, there is some evidence, albeit contradicted evidence, that Tuttle was a member of a joint venture to purchase Brookside.  Consequently, Plaintiff has proffered enough evidence to survive a motion for summary judgment.

{18}   Dodson approached Tuttle about purchasing the Brookside property.  Once presented with the proposal, Tuttle took active steps towards purchasing the property.  Tuttle toured and inspected the facility with the help of contractors.  Moreover, Tuttle got cost estimates for potential repairs and upgrades to the facility.

{19}   The circumstances surrounding the execution of the Contract are some evidence of a joint venture.  Tuttle was present in Wagner's office at the time the Contract was signed, and he actively discussed the purchase with Dodson, Smith, and the Gibsons.  Tuttle also spoke with N. Gibson and Smith about the terms of the Modification.  From these actions, a jury may infer an intent among the parties "to engage in and carry out a single business adventure for joint profit . . . ." *Pike*, 274 N.C. at 8, 161 S.E.2d at 460.

{20}   Plaintiff has also offered evidence that Tuttle met with N. Gibson regarding her management of Brookside.  This is some, though contradicted, evidence that Tuttle had the "right . . . to direct the conduct of the other[s] through a necessary fiduciary relation[ship]." *Id.*

---

[6] The Order on Defendant Allen's Motion for Summary Judgment is filed contemporaneously with the Order on Defendant Tuttle's Motion for Summary Judgment.

{21} Additionally, Plaintiff did not receive the earnest money deposit when the purchase of Brookside fell through. Instead, Dodson returned the earnest money deposit to Tuttle and the Gibsons. This is some evidence that the parties were sharing expenses or pooling their money for a common purpose. *See id.* Taken in a light most favorable to Plaintiff, this is some evidence of a joint venture.

{22} Lastly, numerous depositions have been taken in this case. Smith testified at his deposition that Brookside was to be purchased by Trillium. (Def.'s Br. Supp. Mot. Summ. J. 5.) N. Gibson testified that she did not "understand herself to be in a partnership with Ricky Dodson, Danny Tuttle, Timothy Smith, and/or Trillium with regard to the transaction involving Brookside." (Def.'s Br. Supp. Mot. Summ. J. 6.) Herndon testified that he "understood throughout the entire history of the transaction that the buyer of the Brookside facility was to be a new limited liability company being formed, and not any of the Defendants individually." (Def.'s Br. Supp. Mot. Summ. J. 7.) Keen testified that he "understood that the prospective purchasers would be acquiring the Brookside facility through an entity called Trillium which would have included Tim Smith and Danny Tuttle as members." (Def.'s Br. Supp. Mot. Summ. J. 7.) However, "by memorandum dated September 8, 1999, Smith informed Dodson, Tuttle, Nina Gibson and Larry Gibson that he had 'decided not to become a partner with [Dodson], Danny Tuttle and Larry and Mina [sic] Gibson in this project . . .' and that he wished '[Dodson], Mina [sic] and Larry the upmost [sic] success with Azalea Gardens [sic].'" (Pl.'s Br. Opp'n Mot. Summ. J. 3.) The voluminous deposition testimony and the September 8, 1999 memorandum are at odds. The deposition testimony suggests that Trillium was to be the purchaser of Brookside. Conversely, the September 8, 1999 memorandum suggests that the parties were members of a partnership. Given that the parties can create a joint venture "without creating a partnership in the legal or technical sense of the term," there is a question of fact about the legal relationship that existed between the parties. *Pike*, 274 N.C. at 8, 161 S.E.2d at 460.

{23} Based on the foregoing, Plaintiff has produced sufficient evidence to survive a motion for summary judgment. Therefore, summary judgment in favor of Defendant Tuttle on the issue of a joint venture would be improper.

B.

BREACH OF CONTRACT

{24} Tuttle contends he is entitled to summary judgment because Plaintiff breached the Contract. (Def.'s Br. Supp. Mot. Summ. J. 1, 15.) Specifically, Tuttle argues that Plaintiff was unable to close the transaction because of an undisclosed bankruptcy and other undisclosed liens. (Def.'s Br. Supp. Mot. Summ. J. 15.) The Court finds that Plaintiff's ability to close the transaction is a question of fact upon which there is contradictory evidence. Consequently, summary judgment in favor of Defendant Tuttle based on a breach of the Contract would be improper.

C.

LIQUIDATED DAMAGES

{25} Tuttle argues that the liquidated damages provision in the Contract limits the amount of damages Plaintiff is entitled to recover under the Contract. (Def.'s Br. Supp. Mot. Summ. J. 1, 16–17.) Paragraph 12 of the Contract states, "Buyer agrees that if he should fail or refuse to complete this transaction after timely acceptance by the seller, then any funds or deposit with the broker will be forfeited and shall be split 50% to the broker and 50% to the Seller." (Pl.'s Br. Opp'n Mot. Summ. J., Ex. 3 ¶ 12.)

{26} Paragraph 2 of the Contract lists how the $3,654,000 purchase price is to be paid. (Pl.'s Br. Opp'n Mot. Summ. J., Ex. 3 ¶ 2.) Paragraph 2(A) lists a $25,000 earnest money deposit. (Pl.'s Br. Opp'n Mot. Summ. J., Ex. 3 ¶ 2(A).) Paragraph 2(B) has a space to list any deposit in addition to the earnest money deposit. (Pl.'s Br. Opp'n Mot. Summ. J., Ex. 3 ¶ 2(B).) Paragraph 2(B) of the Contract is blank. (*See* Pl.'s Br. Opp'n Mot. Summ. J., Ex. 3 ¶ 2(B).) No other deposit is listed in the Contract. (*See* Pl.'s Br. Opp'n Mot. Summ. J., Ex. 3.)

{27} "Under the fundamental principle of freedom of contract, the parties to a contract have a broad right to stipulate in their agreement the amount of damages

recoverable in the event of a breach, and the courts will generally enforce such an agreement . . . ." *Seven Seventeen HB Charlotte Corp. v. Shrine Bowl of the Carolinas, Inc.*, 182 N.C. App. 128, 130–31, 641 S.E.2d 711, 713 (2007) (citing 24 Richard A. Lord, *Williston on Contracts* § 65:1, 213 (4th ed. 2002)).  The party seeking to invalidate the liquidated damages provision has the burden of proof. *Seven Seventeen HB Charlotte Corp.*, 182 N.C. App. at 131, 641 S.E.2d at 713.

{28}  In North Carolina, a liquidated damages provision is binding and enforceable where it is not intended to act as a penalty.  *See City of Kinston v. Suddreth*, 266 N.C. 618, 620, 146 S.E.2d 660, 662 (1966).  "A stipulated sum is for liquidated damages only (1) where the damages which the parties reasonably anticipate are difficult to ascertain because of their indefiniteness or uncertainty and (2) where the amount stipulated is either a reasonable estimate of the damages which would probably be caused by a breach *or* is reasonably proportionate to the damages which have actually been caused by the breach."  *E. Carolina Internal Med. v. Faidas*, 149 N.C. App. 940, 945–46, 564 S.E.2d 53, 56 (2002) (emphasis in original).  To determine whether a provision is a liquidated damages clause or a penalty, the Court looks to the "nature of the contract, and its words, and tr[ies] to ascertain the intentions of the parties . . . ."  *Knutton v. Cofield*, 273 N.C. 355, 361, 160 S.E.2d 29, 34 (1968).  The Court will also "consider that the parties, being informed as to the facts and circumstances, are better able than any one else to determine what would be a fair and reasonable compensation for a breach; but the courts have been greatly influenced by the fact that in almost all the cases the damages are uncertain and very difficult to estimate."  *Id.* at 361, 160 S.E.2d at 34–35.

{29}  Paragraph 12 of the Contract clearly states that "[b]uyer agrees that if he should fail or refuse to complete this transaction after timely acceptance by the seller, then any funds or deposit with the broker will be forfeited and shall be split 50% to the broker and 50% to the Seller."  (Pl.'s Br. Opp'n Mot. Summ. J., Ex. 3 ¶ 12.)  The Court finds as a matter of law that Paragraph 12 is a liquidated damages provision.  Consequently, Plaintiff is entitled to fifty (50) percent of the funds

deposited with the broker. Therefore, Plaintiff's damages are limited to $12,500—fifty (50) percent of the $25,000 earnest money deposited with the broker.

{30} Plaintiff argues that $12,500 is "woefully inadequate to compensate Azalea Garden," and, in effect, is an unenforceable penalty. (Pl.'s Br. Opp'n Mot. Summ. J. 15.) Plaintiff's argument that the liquidated damages provision is unreasonable because it is too small in light of the damages actually suffered is not persuasive. It is rare that a party attempts to characterize a liquidated damages clause as a penalty to collect damages in excess of the stipulated figure. *City of Kinston*, 299 N.C. at 620, 146 S.E.2d at 662. The idea that a nonbreaching party could argue that liquidated damages are so low as to constitute a penalty has been rejected in other jurisdictions. *See Nasco, Inc. v. Pub. Storage, Inc.*, 1995 U.S. Dist. LEXIS 7815 (D. Mass. May 3, 1995). The Court in *Nasco* noted:

> In only a handful of reported decisions . . . has the non-breaching party argued that enforcement [of a liquidated damages clause] should be denied on the ground that the liquidated sum was so low as to constitute an unenforceable penalty. *In each such case, the court rejected the argument.*

*Id.* at *6 (emphasis added). There is no penalty where a nonbreaching seller is paid the liquidated sum it agreed to accept in the event of a default by the buyer. *See Mahoney v. Tingley,* 529 P.2d 1068, 1071 (Wash. 1975). In a similar case, the Supreme Court of Idaho, following the reasoning in *Mahoney*, held:

> In this case, we are confronted with a [nonbreaching] seller who claims that the amount of liquidated damages is too low. . . . Under the circumstances of this case, [the nonbreaching seller] is not being penalized in any way. We find that limiting [the nonbreaching seller's] recovery to the amount of earnest money deposited would not constitute a penalty within the meaning of the cases cited, and therefore reverse the trial court's ruling that the liquidated damages clause was unenforceable as a penalty.

*Margaret H. Wayne Trust v. Lipsky*, 846 P.2d 904, 910 (Idaho 1993).

{31} Consistent with the cases cited above, this Court rejects Plaintiff's argument. It is clear that Paragraph 12 of the Contract limits the amount of damages Plaintiff can recover in the event of a breach. Plaintiff is the party who

supplied the form contract. While Plaintiff may have intended another result, that was the effect of the contract which Plaintiff accepted and signed. *See City of Kinston*, 299 N.C. at 621, 146 S.E.2d at 664. If the Court were to hold otherwise, substantial litigation with respect to liquidated damages would result when parties defaulted on a real estate purchase contract and the courts would be constantly required to determine when an earnest money forfeiture provision was a penalty.

{32} Pursuant to Paragraph 12 of the Contract, Plaintiff's damages are limited to $12,500—fifty (50) percent of the $25,000 earnest money deposited with the broker.

IV.

CONCLUSION

{33} Based on the foregoing, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED**:

1. Defendant Tuttle's Motion for Summary Judgment on the issue of a joint venture is DENIED;

2. Defendant Tuttle's Motion for Summary Judgment on the issue of breach of contract is DENIED;

3. Defendant Tuttle's Motion for Summary Judgment on the issue of liquidated damages is GRANTED in part; and

4. Plaintiff's damages are limited to $12,500 as a matter of law.

**IT IS SO ORDERED** this 17th day of March, 2009.