Azalea Garden Bd. & Care, Inc. v. Vanhoy, 2009 NCBC 7.

| | |
|---|---|
| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| DAVIDSON COUNTY | 06 CVS 0948 |

AZALEA GARDEN BOARD & CARE,
INC.,

            Plaintiff,

    v.

MEREDITH DODSON VANHOY,
Personal Representative of the Estate of
Ricky C. Dodson, Deceased; LARRY S.
GIBSON, NINA G. GIBSON, DANIEL W.
TUTTLE; TIMOTHY D. SMITH; and
HARVEY ALLEN, JR.,

            Defendants.

**ORDER & OPINION**

{1}    This matter is before the Court on Defendant Harvey Allen's ("Allen")
Motion for Summary Judgment and Memorandum of Law in Support of Harvey
Allen's Motion for Summary Judgment, dated March 27, 2008.  For the reasons set
forth below, the Motion for Summary Judgment is hereby **GRANTED**.

    *Biesecker, Tripp, Sink & Fitts by Joe E. Biesecker and Christopher A. Raines
    for Plaintiff Azalea Garden Board & Care, Inc.*

    *Sharpless & Stavola, P.A. by Frederick K. Sharpless for Defendant Meredith
    Dodson Vanhoy.*

    *Randolph M. James, P.C. by Randolph M. James for Defendant Timothy D.
    Smith.*

    *Spilman Thomas & Battle, PLLC by Jeffrey D. Patton and Nathan B.
    Atkinson for Defendant Daniel W. Tuttle.*

    *Brooks Pierce McLendon Humphrey & Leonard, LLP by Benjamin R.
    Norman and James C. Adams, II for Defendant Harvey Allen.*

Tennille, Judge.

I.

FACTS

A.

BACKGROUND

{2}   This is a suit for damages for the alleged failure of Defendants to fulfill a contract (the "Contract") to purchase Azalea Gardens Board & Care's ("Plaintiff") Brookside of Winston-Salem Rest Home ("Brookside").  Brookside is a nursing care facility located in Winston-Salem, North Carolina.  The Contract was signed on May 6, 1999, on behalf of Plaintiff as seller by David H. Wagner ("Wagner"),[1] owner and President of Plaintiff.  (Def.'s Br. Supp. Mot. Summ. J. 2; Pl.'s Br. Opp'n Mot. Summ. J. 2.)  Defendant Nina Gibson ("N. Gibson") and Defendant Timothy Smith ("Smith") signed individually as purchasers.[2]  (Def.'s Br. Supp. Mot. Summ. J. 2; Pl.'s Br. Opp'n Mot. Summ. J. 2.)  On July 20, 1999, N. Gibson and Smith executed a modification of the Contract (the "Modification") adjusting the price and payment terms and extending the closing date until September 9, 1999.  (Compl. ¶ 11; Def.'s Br. Supp. Mot. Summ. J. 2; Pl.'s Br. Opp'n Mot. Summ. J. 2.)  Ultimately, the transaction fell through, and the closing of the Brookside purchase never occurred. (Compl. ¶ 14; Def.'s Br. Supp. Mot. Summ. J. 2; Pl.'s Br. Opp'n Mot. Summ. J. 3.) As a result of the failed closing, Plaintiff has filed suit alleging breach of contract and seeking monetary damages.  (Compl. ¶¶ 16–18.)

{3}   It is alleged that Allen was a member of a joint venture with N. Gibson and Smith, among others, to purchase Brookside pursuant to the Contract.  (Compl. ¶ 8.)  Allen, however, was not listed on and did not sign the Contract or the Modification.  (Def.'s Br. Supp. Mot. Summ. J. 2; Pl.'s Br. Opp'n Mot. Summ. J. 5.) Plaintiff's claim against Allen is based exclusively "on the allegation that N. Gibson and Smith executed the Contract on behalf of an existing joint venture in which

---

[1] Mr. Wagner has a law degree but is not engaged in the private practice of law.

[2] Defendant Smith has settled the claims against him.  The Court previously granted summary judgment in favor of Meredith Dodson Vanhoy, Personal Representative of the Estate of Ricky Dodson, deceased.  That ruling is on appeal.  Defendant Tuttle's Motion for Summary Judgment is treated separately.

Allen was a member." (Def.'s Br. Supp. Mot. Summ. J. 2; Pl.'s Br. Opp'n Mot. Summ. J. 5–9.)  Allen asserts that there are no issues of material fact and he is entitled to a judgment as a matter of law because (1) Plaintiff's claim is barred by the Statute of Frauds since he is not a member of the alleged joint venture, and (2) Plaintiff committed its own material breach of the Contract.[3]  (Def.'s Mot. Summ. J. 1; Def.'s Br. Supp. Mot. Summ. J. 16–20.)

{4}     A first action was filed against Defendants in Davidson County in 2002 shortly before expiration of the three (3) year statute of limitation for breach of contract.  At trial, during Plaintiff's evidence, Plaintiff took a voluntary dismissal without prejudice as to all claims.  One (1) day before the one (1)-year period to re-file expired, Plaintiff filed this new suit.[4]

B.

EVIDENCE OF THE ALLEGED JOINT VENTURE

1.

ALLEN'S FAILED 1998 ATTEMPT TO PURCHASE BROOKSIDE

{5}     Allen is a medical doctor with experience directing and managing nursing care facilities.  (Def.'s Br. Supp. Mot. Summ. J. 3.)  In 1998, prior to the Contract at issue in this litigation, Allen, N. Gibson and Defendant Larry Gibson ("L. Gibson") (collectively "the Gibsons") attempted, unsuccessfully, to purchase Brookside. (Def.'s Br. Supp. Mot. Summ. J. 3; Pl.'s Br. Opp'n Mot. Summ. J. 1.)  The Gibsons, who have experience in managing nursing care facilities, engaged Allen to provide medical care to the residents of Brookside pending purchase of the property.  (*See* Def.'s Br. Supp. Mot. Summ. J. 3.)  The Gibsons sought Allen's services because he had previously worked at a nursing care facility operated by the Gibsons.  (Def.'s Br. Supp. Mot. Summ. J. 3.)

{6}     In December 1998, Allen and the Gibsons toured the Brookside facility together and purchased a house adjacent to Brookside where the supervisor-in-

---

[3] The Court need not address the issue of Plaintiff's material breach of the Contract as a result of the Court's ruling on Allen's first basis for summary judgment.

[4] This being a new lawsuit, the Court is not bound by decisions in the previous case.

charge of the facility was to reside. (Pl.'s Br. Opp'n Mot. Summ. J. 1.) Plaintiff cites the purchase of the house adjacent to Brookside as evidence that Allen was a member of a later-formed and different joint venture to purchase Brookside. (Pl.'s Br. Opp'n. Mot. Summ. J. 1.) Allen's wife was also a purchaser of the house; she, however, is not alleged to be a member of the joint venture and is not a defendant in this lawsuit. (Def.'s Reply Br. Supp. Mot. Summ. J. 5.) Ultimately, Allen and the Gibsons failed to execute a contract to purchase Brookside. (Def.'s Br. Supp. Mot. Summ. J. 3.) Wagner testified at his deposition that the failed 1998 attempt at purchasing Brookside was due to a lack of funding. (Def.'s Br. Supp. Mot. Summ. J. 3.) Wagner further testified that the purchase of the house related to the failed 1998 attempt to purchase Brookside and is "separate and distinct" from the Contract at issue in this litigation. (Def.'s Br. Supp. Mot. Summ. J. 3; Def.'s Reply Br. Supp. Mot. Summ. J. 5–6.)

## 2.

## THE BUYER'S GROUP

{7} Plaintiff's main contention is that Allen was a member of a joint venture formed to purchase Brookside and is therefore liable for the alleged breach of the Contract. (Compl. ¶¶ 8, 12.) However, there is no evidence to support that contention. Allen denies under oath that he was a member of any group formed in 1999 to purchase Brookside. The other members of the alleged joint venture expressly deny that Allen was a member of the buyer's group. Specifically, Smith and N. Gibson, the only signatories to the Contract and Modification, testified in their respective depositions "that they did not execute the Contract on behalf of Dr. Allen because he was not apart of the buyer['s] group." (Def.'s Br. Supp. Mot. Summ. J. 2.) Moreover, N. Gibson testified that, from her perspective, "Smith,

Danny Tuttle[5] ("Tuttle"), Ricky Dodson[6] ("Dodson") or a corporation to be formed by them was purchasing [Brookside]." (Def.'s Br. Supp. Mot. Summ. J. 4.) Similarly, Smith testified that he "did not execute the Contract on behalf of Dr. Allen, but rather on behalf of a yet-to-be formed corporation that would be owned by himself, Tuttle, and Dodson." (Def.'s Br. Supp. Mot. Summ. J. 4.) In fact, both Smith and Tuttle testified that as of May 6, 1999, the day the Contract was signed, they had never even met Allen. (Def.'s Br. Supp. Mot. Summ. J. 4.)

{8} Based on the record before the Court, it is clear that Wagner is the only person to specifically include Allen in the buyer's group. (*See* Def.'s Br. Supp. Mot. Summ J. 5–7.) At his deposition, Wagner testified that the *only* evidence of the joint venture was the presence of the buyer's group in his office at the execution of the Contract on May 6, 1999. (Def.'s Br. Supp. Mot. Summ J. 5–7.)[7] Allen, however, was not present at the execution of the Contract on May 6, 1999. (Def.'s Br. Supp. Mot. Summ. J. 7.) The only Defendants present at execution were Smith, Tuttle, Dodson, and the Gibsons. (Def.'s Br. Supp. Mot. Summ. J. 7.) Furthermore, Wagner testified that Smith, Tuttle, Dodson, and the Gibsons each affirmatively indicated they were a part of the buyer's group. (Def.'s Br. Supp. Mot. Summ. J.

---

[5] Danny Tuttle, a defendant in this litigation, is an alleged member of the buyer's group.

[6] Ricky Dodson was a broker with The Interstate Companies of America, Inc. He was retained as Plaintiff's agent for the sale of the Brookside property. Plaintiff alleged that Mr. Dodson subsequently withdrew from his broker status and became a partner in a joint venture to buy Brookside pursuant to the Contract. (Compl. ¶ 10.) Mr. Dodson passed away in October of 2000. The Personal Representative of Mr. Dodson's estate moved for summary judgment on the basis that Plaintiff failed to file a timely claim within the claim notice period. This Court, by Order dated February 28, 2008, granted summary judgment as to Mr. Dodson's estate.

[7] Q: Is there any other particular evidence that you have that will – that supports your allegation that these folks were signing this document as well on behalf of the group?
A: Well, as I say, it was signed at a time that they were all gathered around my desk, and they were all representing themselves as the buyer group, and they chose persons to sign on their behalf, and those are the persons who signed. I mean, that was the complete indication. (Wagner Dep. I 50–51.)

Q: Okay. And how did he [Smith] indicate to you that he was signing on behalf of this group?
A: Well, the entire group was there discussing the purchase, and he signed the document, and I saw him sign the document. (Wagner Dep. I 36–37.)

7–8.)[8]  Noticeably absent from Wagner's testimony was any mention of Allen affirmatively indicating membership in the buyer's group.  (Def.'s Br. Supp. Mot. Summ. J. 8.)  Indeed, Wagner's own testimony makes clear that Allen's involvement in the alleged joint venture was pure speculation on Wagner's part.  (*See* Def.'s Br. Supp. Mot. Summ. J. 15.)[9]

3.

THE BANK DOCUMENTS

{9}     Financing was required by the parties to purchase Brookside.  James Keen ("Keen") of Branch Banking & Trust ("BB&T") was the banker in charge of originating the loan.  In support of the alleged joint venture, Plaintiff asserts that Allen is linked to the bank documents originated for the purchase of Brookside. Specifically, Plaintiff notes that Dodson gave Allen's name to Keen, and Keen had possession of Allen's personal financial information along with the personal financial information of Smith, Dodson, and the Gibsons.  (Pl.'s Br. Opp'n Mot. Summ. J. 2; Def.'s Reply Br. Supp. Mot. Summ. J. 5, 7.)  As a result of this information, two commitment letters from Keen and BB&T listed Allen as one of the co-makers of the loan along with the rest of the alleged buyer's group.  (Pl.'s Br. Opp'n Mot. Summ. J. 2; Def.'s Reply Br. Supp. Mot. Summ. J. 5, 7.)  However, Keen knew of Allen only through Dodson and included Allen's name on the loan commitment letter at Dodson's request.  (Def.'s Reply Br. Supp. Mot. Summ. J. 7–8.) Additionally, Allen's personal financial information was from "December 1998, consistent with Dr. Allen's failed attempt to purchase Brookside." (Def.'s Reply Br. Supp. Mot. Summ. J. 8.)  Keen specifically testified at his deposition that he had

[8] Q: Okay.  Who told you they were acting as purchasers?
A:  Well, I know that Mr. – Smith did, and the Gibsons did, and Danny Tuttle did, and at one time Ricky Dodson did.  (Wagner Dep. I 34.)

[9] Q: Well, you knew that Dr. Harvey Allen did not sign the contract right?
A: Yeah, I knew he did not sign the contact.

Q: Okay. You just happened to have his address?
A: No, I happened to have his involvement, based on my knowledge of the – of his involvement with the Gibsons and what he had anticipated or indicated to me he was planning on doing, and I realized that – I knew that he was a part of the buyer's group.  (Wagner Dep. I 201–02.)

never met Allen and was working at the instruction of Dodson. (Def.'s Reply Br. Supp. Mot. Summ. J. 8.)

{10} Based on the record, it is clear that Keen got Allen's name by the unauthorized acts of Dodson. (Def.'s Reply Br. Supp. Mot. Summ. J. 7.) Plaintiff has produced no evidence that Allen instructed Keen to include him in the loan documentation. Likewise, Plaintiff has produced no evidence that Allen consented to Dodson distributing his name to Keen. In fact, Allen testified at his deposition that he had never talked with Dodson. (Def.'s Reply Br. Supp. Mot. Summ. J. 8.) There is no evidence to the contrary.

4.

THE LETTER FROM HERNDON TO WAGNER

{11} The closing of the Brookside purchase was to be conducted by attorney Brian Herndon ("Herndon") of the firm Blanco Tackabery & Matamoros, P.A. (Pl.'s Br. Opp'n Mot. Summ. J. 3.) Ultimately, however, the buyers refused to close on the purchase. (Pl.'s Br. Opp'n Mot. Summ. J. 3; Def.'s Reply Br. Supp. Mot. Summ. J. 8.) In light of their refusal, the buyers instructed Herndon to write a letter to Wagner advising him that they did not intend to perform under the Contract. (Pl.'s Br. Opp'n Mot. Summ. J. 3; Def.'s Reply Br. Supp. Mot. Summ. J. 8.) The letter to Wagner was carbon copied to Allen. (Pl.'s Br. Opp'n Mot. Summ. J. 3). Plaintiff suggests that Allen's name on this letter is further evidence of Allen's alleged membership in the joint venture formed to purchase Brookside. (Pl.'s Br. Opp'n Mot. Summ. J. 3.) Put another way, Plaintiff suggests that Allen's name on the letter raises an inference that Allen was a member of the buyer's group. (Pl.'s Br. Opp'n Mot. Summ. J. 3.) At his deposition, however, Herndon testified that he copied the letter to Allen because Dodson instructed him to do so, "and in fact [he] was writing that letter on behalf of 'primarily Ricky Dodson[] [and] also – the entity that was to be the new buyer.'" (Def.'s Reply Br. Supp. Mot. Summ. J. 8.) Herndon made clear at his deposition that he "understood the potential buyer of Brookside to be an entity to be formed under the direction of Dodson." (Def.'s Reply Br. Supp.

Mot. Summ. J. 8–9.) Similarly to Keen, Herndon testified that he had never met Allen. (Def.'s Reply Br. Supp. Mot. Summ. J. 9.)

{12} Based on the record before the Court, Herndon got Allen's name from Dodson's unauthorized act. (*See* Def.'s Reply Br. Supp. Mot. Summ. J. 9.) Plaintiff has produced no evidence that Allen instructed Herndon to include his name in the letter to Wagner. Similarly, Plaintiff has produced no evidence that Allen consented to Dodson's act. Indeed, Allen testified that he had never talked with Dodson or consented to Dodson taking actions on his behalf. (Def.'s Reply Br. Supp. Mot. Summ. J. 8–9.)

## II.
## LEGAL STANDARD

{13} Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C.R. Civ. P. 56(c). "It is not the purpose of the rule to resolve disputed material issues of fact but rather to determine if such issues exist." *Id.* at 56 cmt. The burden of showing a lack of triable issues of fact falls upon the moving party. *See, e.g.*, *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). Once this burden has been met, the nonmoving party must "produce a forecast of evidence demonstrating that [it] will be able to make out at least a prima facie case at trial." *Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). The Court must exercise caution in granting a motion for summary judgment. *N.C. Nat'l Bank v. Gillespie*, 291 N.C. 303, 310, 230 S.E.2d 375, 379 (1976).

## III.
## ANALYSIS

{14} The Statute of Frauds requires that a contract to buy or sell real property be in writing. *See* N.C. Gen. Stat. § 22-2. Specifically, "[a]ll contracts to sell or

convey any lands . . . shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized." *Id.* The facts in this litigation are clear—Allen did not sign the Contract executed on May 6, 1999 or the Modification executed on July 20, 1999. Consequently, the Statute of Frauds will bar Plaintiff's breach of contract claim against Allen unless Plaintiff can establish that someone "lawfully authorized" signed the Contract on Allen's behalf.

{15} Plaintiff contends that the Statute of Frauds does not bar Plaintiff from recovering from Allen because Allen was a member of a joint venture formed to purchase Brookside. (Compl. ¶ 8.) Plaintiff further asserts that Smith and N. Gibson signed the Contract on behalf of the joint venture thereby making all co-adventurers liable for the alleged breach of contract. (Compl. ¶ 12.) In North Carolina, a writing not signed by the party to be charged[10] does not run afoul of the Statute of Frauds when the writing is signed by an authorized agent. *See Lewis v. Allred*, 249 N.C. 486, 489, 106 S.E.2d 689, 692 (1959). "Each member of a joint venture is both an agent for his coadventurer and a principal for himself." *Pike v. Wachovia Bank & Trust Co.*, 274 N.C. 1, 8, 161 S.E.2d 453, 460 (1968) (*citing Summers v. Hoffman*, 341 Mich. 686, 696, 69 N.W. 2d 198, 203 (1955)). The Statue of Frauds is satisfied "if the agent signs in his own name instead of that of his principal . . . ." *Rose v. Vulcan Materials Co.*, 282 N.C. 643, 670, 194 S.E.2d 521, 539 (1973). Thus, the fact that N. Gibson and Smith signed the Contract in their own individual names does not absolve Allen, or the alleged joint venture, from liability. Given the foregoing, the viability of Plaintiff's claim against Allen hinges on the existence of a joint venture in which Allen was a participant.

{16} A joint venture is "an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, but without creating a partnership in the legal or technical sense of

---

[10] The "party to be charged" is "the one against whom relief is sought . . . .'" *Lewis v. Murray*, 177 N.C. 17, 19, 97 S.E. 750, 751 (1919).

the term." *Pike*, 274 N.C. at 8, 161 S.E.2d at 460 (1968) (*citing In re Simpson*, 222 F. Supp. 904, 909 (M.D.N.C. 1963)).  An express agreement is not required to prove the existence of a joint venture. *See Rhue v. Rhue* ___ N.C. App. ___, ___, 658 S.E.2d 52, 59 (2008); *see also Wike v. Wike*, 115 N.C. App. 139, 141, 445 S.E.2d 406, 407 (1994).  Rather, intent to create a joint venture can be inferred by the conduct of the parties and the surrounding circumstances. *See Rhue*, ___ N.C. App. at ___, 658 S.E.2d at 59; *see also Wike*, 115 N.C. App. at 141, 445 S.E.2d at 407.  The existence of a joint venture "may be based upon a rational consideration of the acts and declarations of the parties, warranting the inference that the parties understood that they were [co-adventurers] and acted as such." *Davis v. Davis*, 58 N.C. App. 25, 30, 293 S.E.2d 268, 271 (1982) (citing *Eggleston v. Eggleston*, 228 N.C. 668, 674, 47 S.E. 2d 243, 247 (1948)).  "Facts showing the joining of funds, property, or labor, in a common purpose . . . in which each has a right . . . to direct the conduct of the other[s] through a necessary fiduciary relation[ship]" is sufficient for finding the existence of a joint venture. *Pike*, 274 N.C. at 8, 161 S.E.2d at 460; *Cheape v. Chapel Hill*, 320 N.C. 549, 561, 359 S.E.2d 792, 799 (1987).

{17}   In North Carolina, joint ventures are similar to partnerships, and they are "governed by substantially the same rules." *Jones v. Shoji*, 336 N.C. 581, 585, 444 S.E.2d 203, 205 (1994).  A hallmark of a partnership is the sharing of "any profits, income, expenses, joint business property or hav[ing] authority of any kind over each other." *Wilder v. Hobson*, 101 N.C. App. 199, 203, 398 S.E.2d 625, 628 (1990).

{18}   Moreover, using North Carolina partnership law as a guide, where one co-adventurer executes an instrument in his individual name, the party attempting to hold the joint venture liable has the burden of proving that the other co-adventurers either authorized or ratified the execution of the instrument. *See In the Matter of Oxford Plastics v. Goodson*, 74 N.C. App. 256, 262, 328 S.E.2d 7, 11 (1985).  Stated otherwise, when a document is not signed in the joint venture's name, "a plaintiff must show that the defendant was acting on behalf of the [joint venture] or that the [joint venture] ratified the individual's act." *See Messer v. Laurel Hill Assoc.*, 93 N.C. App. 439, 445, 378 S.E.2d 220, 224 (1989).

{19}  In this case there is no express written agreement creating a joint venture between the Defendants.  Thus, for Allen to be liable, a joint venture must be inferred from the conduct of the parties and the surrounding circumstances.  *See Rhue*, ___ N.C. App. at ___, 658 S.E.2d at 59.  Based on the record before the Court, however, there is no evidence from which to draw such an inference.  Plaintiff has failed to produce any evidence consistent with the existence of a joint venture in which Allen was a participant.

{20}  Allen and the Gibsons did tour the Brookside facility in 1998 and purchased an adjoining piece of property.  These actions were taken in anticipation of purchasing Brookside in 1998 and are not related to this litigation.  Wagner, the owner and President of Plaintiff and a signatory to the Contract, admitted at his deposition that the actions taken in 1998 were "separate and distinct" from the Contract at issue in this litigation.  (Def.'s Br. Supp. Mot. Summ. J. 3; Def.'s Reply Br. Supp. Mot. Summ. J. 5–6.)  Based on the record before the Court, Allen's participation in a joint venture to purchase Brookside in 1999 cannot be inferred from Allen and the Gibsons' failed attempt to purchase Brookside in 1998.  Wagner's own deposition testimony concedes that Allen's actions in 1998 were not consistent with membership in the alleged joint venture to purchase Brookside in 1999.

{21}  The record before the Court also shows that the signatories to the Contract explicitly deny signing the contract on behalf of Allen.  Plaintiff has failed to cite a case in which all the members of an alleged joint venture denied the joint venture's existence and yet the court nonetheless found that a joint venture existed.  Both N. Gibson and Smith testified that a yet-to-be formed corporation owned by Smith, Tuttle, and Dodson was to be the owner of Brookside.  Moreover, when pressed at his deposition for evidence of a joint venture, Wagner could only produce the presence of Smith, Tuttle, Dodson, and the Gibsons around his desk the day the Contract was signed—May 6, 1999.  By all accounts, Allen was not present for the execution of the Contract.   Indeed, Smith and Tuttle both testified that they had never met Allen prior to the signing of the Contract.  Moreover, Allen testified he

had never spoken with Dodson. The *Pike* court defined a joint venture as "an association of persons *with intent . . .* express or implied, to engage in and carry out a single business adventure for joint profit . . . ." *Pike*, 242 N.C. at 8, 161 S.E.2d at 460 (emphasis added). Based on N. Gibson and Smith's understanding of the situation, they undoubtedly lacked intent "to engage in and carry out a single business adventure for profit" with Allen. Quite the opposite, N. Gibson and Smith expressly stated they were not members of a joint venture with Allen. Furthermore, it is unclear how Smith and Tuttle intended to be co-adventurers with Allen given the fact that they had not met Allen prior to May 6, 1999. N. Gibson's and Smith's testimony, coupled with evidence that Smith and Tuttle had not met Allen prior to May, 6 1999, certainly does not "warrant[] the inference that the parties understood that they were [co-adventurers]" together. *Davis*, 58 N.C.App. at 30, 293 S.E.3d at 271. Instead, the evidence before the Court warrants the inference that the parties did *not* intend to be members of a joint venture with Allen.

{22} Consistent with *Goodson* and *Messer*, Allen may be liable for breach of the Contract if he authorized, or subsequently ratified, N. Gibson or Smith signing the Contract on his behalf. *Goodson*, 74 N.C. App. at 262, 328 S.E.2d at 11; *see also Messer*, 93 N.C. App. at 445, 378 S.E.2d at 224. However, Plaintiff has produced no evidence that Allen authorized N. Gibson or Smith to sign the Contract on his behalf. Moreover, there is no evidence in the record that Allen subsequently ratified N. Gibson and Smith's execution of the Contract.

{23} At first glance, Allen being listed on two loan commitment letters as a co-maker of the loan to purchase Brookside appears to be some evidence that he was a member of a joint venture to purchase Brookside. Upon further review, however, it is clear that Allen's name was given to Keen by Dodson's unauthorized act. In fact, Keen testified that he had never met Allen and that he was instructed by Dodson to put Allen's name on the loan commitment letters. Plaintiff has failed to produce any evidence that Allen instructed Keen to include his name on the loan

documentation.  Additionally, Plaintiff can point to no evidence that Allen consented to, or ratified, Dodson's distributing his name to Keen.

{24}  Plaintiff has pointed to a letter written by Herndon to Wagner which was carbon copied to Allen as evidence that Allen was a member of the alleged joint venture.  Similar to the loan commitment letters, however, Herndon copied the letter to Allen at Dodson's request.  At the time the letter was sent to Wagner, Herndon had never met Allen.  In fact, Herndon testified that "he understood the potential buyer of Brookside to be an entity formed under the direction of Dodson." (Def.'s Reply Br. Supp. Mot. Summ. J. 8–9.)  Herndon's own testimony suggests that he did not view Allen as a member of the buyer's group.  Plaintiff has offered no evidence that Allen instructed Herndon to carbon copy him on the letter.  Additionally, Plaintiff can point to no evidence that Allen consented to, or ratified, Dodson's distributing his name to Herndon.

{25}  Taken as a whole, Plaintiff has relied exclusively on the actions of others— specifically Dodson, Keen, and Herndon—to prove Allen's membership in the alleged joint venture.  Plaintiff has produced no evidence that Allen "joined funds, property, or labor in a common purpose." *Pike*, 274 N.C. at 8, 161 S.E.2d at 460; *see also Wilder* 101 N.C. App. at 203, 398 S.E.2d at 628.  Furthermore, Allen's membership in the joint venture cannot be inferred from the circumstances given that many of the alleged members of the joint venture had never met prior to May 6, 1999.  Most damaging to Plaintiff's claim is the undisputed fact that all the alleged members of the joint venture deny his participation.  Plaintiff has relied entirely on circumstantial evidence to prove the existence of a joint venture, and, as a matter of law, that is not sufficient.  In the absence of a joint venture or Allen's subsequent ratification of N. Gibson and Smith's act, Plaintiff's claim is barred by the Statute of Frauds.

{26}  For the reasons stated above, there are no genuine issues of material fact and Allen is entitled to judgment as a matter of law.  The Court hereby **GRANTS** Allen's Motion for Summary Judgment.

{27} Based on the Court's ruling that the Statute of Fraud bars Plaintiff's claim against Allen, the Court need not address Allen's claim that Plaintiff materially breached the Contract.

IV.

CONCLUSION

Based on the foregoing, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED**:

1. Defendant Allen's Motion for Summary Judgment is GRANTED; and

2. Plaintiff's claim is dismissed with prejudice.

**IT IS SO ORDERED** this 17th day of March, 2009.